UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

TOGETHER EMPLOYEES, by Individual
Representatives, ROBERTA LANCIONE,
JOYCE MILLER, MARIA DIFRONZO,
MICHAEL SACCOCCIO, ELIZABETH
BIGGER, NATASHA DICICCO, NICHOLAS
ARNO, and RUBEN ALMEIDA

                Plaintiffs,

v.

MASS GENERAL BRIGHAM
INCORPORATED,

                Defendant.

Civil Action No. 1:21-cv-11686

## DECLARATION OF RAMONA NICHOLS

I, Ramona Nichols, am above the age of 18 and competent to testify. All the information in this declaration is based on my personal knowledge.

1. I am Director, Employee and Labor Relations at Mass General Brigham at Massachusetts General Brigham Incorporated ("MGB").

2. As part of my regular job duties, I direct the development and implementation of the overall employee/labor relations strategy, and partner with HR and cross functional teams to create and sustain positive Employee Relations programs and best practices.

3. I have a Bachelor's of Science in Psychology from the University of Tennessee at Chattanooga and a Master of Arts in Industrial Organizational Psychology from the University of New Haven. In addition, I have completed the Massachusetts Commission Against Discrimination's training in both Employment Discrimination and Responding to Accommodation Requests.

4.      I served in a key role to the review committee (the "Religious Exemption Review Committee") that developed and implemented MGB's interactive process for determining whether or not to grant religious exemptions from the vaccine requirement established by MGB's COVID-19 Vaccination Policy.

### A. MGB Announced Its Vaccination Policy, Requiring That Staff Be Vaccinated against COVID-19 Unless Approved for a Religious or Medical Exemption

5.      On August 10, 2021, MGB's President and CEO sent a notice to staff members explaining its COVID-19 Vaccination Policy (the "Vaccination Policy"). A true and accurate copy of the President's communication is at Exhibit 2. The Policy initially indicated that employees should be fully vaccinated by October 15, 2021, unless they were granted a religious or disability exemption. (Later MGB revised the Vaccination Policy to require a first dose of a two-dose series by October 15, 2021, followed by a later second dose). The deadline for employees to request an exemption was September 3, 2021. *See* Declaration of Dr. Michael Klompas filed contemporaneously herewith.

6.      The announcement included a link to forms that employees could use to request a disability or religious exemption from the Vaccination Policy. The link to the request forms was also available on MGB's employee intranet site. Managers were also empowered to help direct employees to the forms.

### B. MGB Provided a Simple Process for Employees to Request a Religious Exemption

7.      In order to request a religious exemption, an employee simply had to enter information into an online form. A true and accurate copy of that form is at Exhibit 20.

8.      The religious exemption form invited the employee to provide a narrative explaining the basis for the request. The form asked the employee to "(1) identify your sincerely

held religious belief, practice or observance and (2) explain why it prevents you from receiving a COVID-19 vaccine." The form advised each employee, "Please note that you may be required to provide additional information or supporting documentation to support your request for an exemption."

9. There was no limit as to the number of characters that an employee could enter into the form. Employees could write as long an explanation as they chose to write. In fact, it said right on the form that the text box would expand as needed. *See* Exhibit 20.

### C. The Religious Exemption Review Committee

10. MGB assembled the Religious Exemption Review Committee to review the religious exemption requests. Each MGB entity was initially asked to identify one Human Resources person from that entity to join the Committee. These Human Resources professionals were trained in responding to accommodation requests and given additional training in responding to religious exemption requests as part of this process. As the volume of requests increased, certain entities with large numbers of requests were asked to identify one or more additional well-qualified people to join the Committee.

11. A senior in-house attorney in MGB's Office of the General Counsel with extensive experience in labor and employment law served as Chair of the Religious Exemption Review Committee.

12. MGB also arranged for certain employees with particularly relevant expertise to serve as advisors to the Committee. I was designated as one of those advisors due to my training and experience in Employee Relations and Accommodations at MGB. Thus, I was not assigned specific requests, but rather I served as an advisor to the Committee and its members on a regular basis and attended Committee meetings.

### D. MGB's Urgent Health and Safety Priorities Provided Guidance for the Religious Exemption Review Process

13. Prior to reviewing any exemption requests, the Religious Exemption Review Committee was advised of MGB's urgent health and safety priorities that would impact the review process. These priorities were developed by senior leadership and health experts at MGB, a widely renowned healthcare system.

14. First, the review process needed to be prompt, given the spread of the COVID-19 Delta variant and the need to have employees vaccinated by the deadlines set out in MGB's Vaccination Policy. Second, the review process was to be as stringent as possible consistent with the law, so as to minimize the number of unvaccinated staff at MGB given the risks that unvaccinated staff presented to MGB's medically vulnerable patient population, other employees and visitors and to ensure available staff to respond to the ongoing public health crisis. Third, it would be an undue hardship for MGB to allow large numbers of employees to remain unvaccinated while interacting with MGB's medically vulnerable patient population, other employees and visitors.

15. The Religious Exemption Review Committee was aware that the pandemic, and particularly the rapid spread of the Delta variant of COVID-19, was a public health emergency, and that MGB had an urgent responsibility to help patients diagnosed with COVID-19, as well as to protect its staff, medically vulnerable population and visitors from infection. We were also aware that as a major hospital, the perception of safety was critical for patients, visitors and the public.

16. The Religious Exemption Review Committee was tasked with designing a process that would be consistent with those urgent health and safety priorities. I was also aware that the

impending fall and winter seasons were particularly concerning for new waves of COVID-19 infection especially given the Delta variant.

### E. The Religious Exemption Review Committee Was Tasked with Reviewing What Would Be a High Volume of Requests in an Accelerated Time Frame, to Meet the Urgent Health and Safety Priorities

17. The Religious Exemption Review Committee was also advised that exemption requests were to be reviewed and processed as soon as possible, with the understanding that the employees needed to receive a vaccine by October 15 under the Vaccination Policy.

18. This timeline was to ensure that any employee whose exemption was denied would have adequate time to consider vaccination, and if they decided to vaccinate, to do so under the schedule laid out in the Vaccination Policy.

### F. The Religious Exemption Review Committee Received Training on Applicable Legal Standards Regarding Religious Exemptions

19. The Religious Exemption Review Committee received training by a senior attorney in MGB's Office of the General Counsel on the applicable legal standards that govern religious exemptions, including what constitutes an undue hardship.

### G. The Committee Met Frequently to Ensure a Process That Was Fair, Consistent and Legally Compliant

20. The Religious Exemption Review Committee met frequently to discuss developing a reasonably consistent approach to religious exemption requests.

21. This included a regular 90-minute meeting twice a week, and in one instance a full day meeting, with many other additional and ad hoc meetings and discussions about general themes to ensure consistent responses as needed.

22. The members of the Committee and the advisors to that Committee worked tirelessly to review and process each request.

### H. The Religious Exemption Review Committee Carefully Designed an Interactive Process

23. The Religious Exemption Review Committee designed an interactive process for evaluating the religious exemption requests.

24. Each request was assigned to a member of the Religious Exemption Review Committee. That member reviewed each request assigned to him or her. The member could also raise the request for discussion with other Committee members or the full Committee as needed.

25. Each request received careful, individualized attention from at least one reviewer from the Religious Exemption Review Committee, and often from more member(s) of that Committee if not the full Committee.

26. In that interactive process, any employee who raised any substantive religious objection to the vaccine would then receive follow-up questions requesting more information.

27. For those requests where more information was needed to assess the employee's religious belief, adherence to that belief, and how the belief prevented them from receiving the COVID-19 vaccine, the Religious Exemption Review Committee designed an approach as to which follow-up questions would be asked of employees. In designing that approach, the Committee aimed to achieve reasonable consistency between follow-up questions but also to provide each reviewer flexibility to customize the questions that were appropriate to that particular request. Certain of the follow-up questions were broadly applicable to many or most requests; others were developed specifically in response to certain common elements or themes seen frequently in the pool of requests.

28. The reviewer exercised his or her best judgment in choosing the follow-up questions most fitting for each individual request.

29. Employees were instructed to send responses to the follow-up questions to a dedicated e-mail box at MGB.  Employees were free to submit whatever information they wanted to that e-mail box, including documents or attachments, along with their responses to the follow-up questions.  Many did choose to send documents or attachments.  Many of the documents were downloaded or purchased from online, or cut and pasted from internet forms.  The Committee became well acquainted with the many forms available online, as members saw the same internet forms submitted by multiple employees.

30. Each employee's response was then reviewed by the same Committee member who had been assigned to that request.  The Committee members carefully reviewed any follow-up responses submitted by the employees to which they had been assigned.

31. In some cases, where a Committee member determined that more information was needed, that member would send additional follow-up questions to the employee, and ask them to submit a response to the same email box.  The reviewers carefully reviewed any additional information submitted by the employee in response.

32. Though MGB had set a deadline of September 3, 2021 for submission on religious exemption requests, many employees submitted requests after the deadline.  The Committee reviewed and processed those late requests as well.

I. **The Committee Members Made Thoughtful Decisions about Each Employee's Request**

33. The Committee's process involved having the requisite interaction with each employee to get an understanding of the nature of the sincere religious belief, the person's adherence to the religious belief, and how that person's religious belief prevented them from receiving the COVID vaccine.

34. The Committee met frequently to discuss a consistent approach to making decisions on requests that was consistent with MGB's urgent health and safety priorities. The Committee strove for a consistent and thoughtful approach, for example, to what would be considered a sincere request; a religious request; and a conflict with the Vaccination Policy.

35. The Committee also factored into its decision-making MGB's workforce and public health considerations with allowing a large number of exemptions, because to do so would impose an undue hardship given the risks that unvaccinated staff pose to MGB's medically vulnerable patient population, employees and visitors.

36. At least one Committee member made the decision as to each request. In more detailed cases, a subset of the Committee or the whole Committee also participated in the decision.

**J.   Communication of the Decision to Accept or Deny Request for Religious Exemptions**

37. After decisions were made, each employee who had requested an exemption received by e-mail a written decision either approving or denying the request.

38. Most approvals were emailed to employees on or after September 6, 2021. Denials were emailed as the decisions were made. We endeavored to ensure that all decisions for requests received before the September 3, 2021 deadline were emailed at least three weeks before the October 15 deadline for employee vaccination.

**K.   Some Employees Reached Out to the Committee About Denial of Their Requests**

39. Due to MGB's urgent timeline to achieve its health and safety priorities, MGB determined that they could not provide an appeal process for every employee whose requests were denied. MGB also determined that an appeal process would likely result in duplication,

with the Committee having to review substantially the same material submitted in the first round of the process.

40. Some employees who were displeased with the denial of their requests wrote to the Committee to express their disappointment with the decision or seeking to provide additional information. Some of these interactions were very tense, and the Committee felt that it was important to continue to use the dedicated email address for these sensitive and deeply personal communications.

41. The Committee reviewed those additional communications to the extent feasible. In particular, the Committee strove to ensure that each employee had the opportunity to provide the necessary information to consider their request.

42. Because the surge in cases from the Delta variant in the summer and fall of 2021 was (and is) stressing the health care system and this was an emergency, MGB's ability to engage in this interactive process on these issues was not limitless.

**L.      Decisions on Individual Plaintiffs' Requests for Exemptions**

Ruben Almeida

43. On or about September 1, 2021, Ruben Almeida ("Almeida") submitted a religious exemption request form. A true and accurate copy is at Exhibit 21.

44. On or about September 10, 2021, MGB requested additional information from Almeida. A true and accurate copy is at Exhibit 22.

45. On or about September 12, 2021, Almeida responded to MGB's request for additional information. A true and accurate copy is at Exhibit 23.

46. On or about September 23, 2021, MGB notified Almeida that his request for a religious exemption from the vaccination requirement had been denied. A true and accurate copy is at Exhibit 24.

Nicholas Arno

47.     On or about August 24, 2021, Nicholas Arno ("Arno") submitted a religious exemption request form.  A true and accurate copy is at Exhibit 25.

48.     On or about September 4, 2021, MGB requested additional information from Almeida.  A true and accurate copy is at Exhibit 26.

49.     On or about September 7, 2021, Arno responded to MGB's request for additional information.  A true and accurate copy is at Exhibit 27.

50.     On or about September 14, 2021, MGB notified Arno that his request for a religious exemption from the vaccination requirement had been denied.  A true and accurate copy is at Exhibit 28.

Elizabeth Bigger

51.     On or about September 3, 2021, Elizabeth Bigger ("Bigger") submitted a religious exemption request form.  A true and accurate copy is at Exhibit 29.

52.     On or about September 10, 2021, MGB requested additional information from Bigger.  A true and accurate copy is at Exhibit 30.

53.     On or about September 13, 2021, Bigger responded to MGB's request for additional information.  A true and accurate copy is at Exhibit 31.

54.     On or about September 14, 2021, MGB notified Bigger that her request for a religious exemption from the vaccination requirement had been denied.  A true and accurate copy is at Exhibit 32.

Natasha DiCicco

55.     On or about September 2, 2021, Natasha DiCicco ("DiCicco") submitted a religious exemption request form.  A true and accurate copy is at Exhibit 33.

56. On or about September 10, 2021, MGB requested additional information from DiCicco. *See* Exhibit 34.

57. On or about September 10, 2021, DiCicco responded to MGB's request for additional information. A true and accurate copy is at Exhibit 35.

58. On or about September 14, 2021, MGB notified DiCicco that her request for a religious exemption from the vaccination requirement had been denied. A true and accurate copy is at Exhibit 36.

Maria DiFronzo

59. On or about September 1, 2021, Maria DiFronzo submitted a religious exemption request form. A true and accurate copy is at Exhibit 37.

60. On or about September 10, 2021, MGB requested additional information from DiFronzo. A true and accurate copy is at Exhibit 38.

61. On or about September 13, 2021, DiFronzo responded to MGB's request for additional information. A true and accurate copy is at Exhibit 39.

62. On or about September 14, 2021, MGB notified DiFronzo that her request for a religious exemption from the vaccination requirement had been denied. A true and accurate copy is at Exhibit 40.

Roberta Lancione

63. On or about September 3, 2021, Roberta Lancione ("Lancione") submitted a religious exemption request form. A true and accurate copy is at Exhibit 41.

64. On or about September 7, 2021, MGB requested additional information from Lancione. *See* Exhibit 42.

65. On or about September 12, 2021, Lancione responded to MGB's request for additional information. A true and accurate copy is at Exhibit 43.

66. On or about September 16, 2021, MGB notified Lancione that her request for a religious exemption from the vaccination requirement had been denied. A true and accurate copy is at Exhibit 44.

Joyce Miller

67. On or about August 20, 2021, Joyce Miller ("Miller") submitted a religious exemption request form. A true and accurate copy is at Exhibit 45.

68. On or about September 4, 2021, MGB requested additional information from Miller. A true and accurate copy is at Exhibit 46.

69. On or about September 7, 2021, Miller responded to MGB's request for additional information. A true and accurate copy is at Exhibit 47.

70. On or about September 14, 2021, MGB notified Miller that her request for a religious exemption from the vaccination requirement had been denied. A true and accurate copy is at Exhibit 48.

Michael Saccoccio

71. On or about August 22, 2021, Michael Saccoccio ("Saccoccio") submitted a religious exemption request form. A true and accurate copy is at Exhibit 49.

72. On or about September 2, 2021, MGB requested additional information from Saccoccio. A true and accurate copy is at Exhibit 50.

73. On or about September 7, 2021, Saccoccio responded to MGB's request for additional information. A true and accurate copy is at Exhibit 51.

74. On or about September 11, 2021, MGB notified Saccoccio that his request for a religious exemption from the vaccination requirement had been denied. A true and accurate copy is at Exhibit 52.

### M. Any Unvaccinated Employee Can Return to Work Upon Vaccination

75. Any of the named Plaintiffs in this matter—or any MGB employee currently on unpaid leave due to non-compliance with the MGB Vaccination Policy—is eligible to return to work as soon as he or she is compliant with the Vaccination Policy.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed this 30th day of October, 2021.

_____
Ramona Nichols

76705033v.4

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2021, a copy of the foregoing document was filed electronically through the Court's electronic filing system ("ECF system") and that counsel for Plaintiffs is a registered user of the ECF system.  Notice of this filing will be sent by operation of the Court's ECF system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's ECF system.

*/s/ Katherine A. Perrelli*
Katherine A. Perrelli