UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOGETHER EMPLOYEES, by Individual Representatives, ROBERTA LANCIONE, JOYCE MILLER, MARIA DIFRONZO, MICHAEL SACCOCCIO, ELIZABETH BIGGER, NATASHA DICICCO, NICHOLAS ARNO and RUBEN ALMEIDA, <br><br> Plaintiffs, <br> v. <br><br> MASS GENERAL BRIGHAM INCORPORATED, <br><br> Defendant. | Civil Action No. 1:21-cv-11686 |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Defendant Mass General Brigham Incorporated ("MGB"), by and through its undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 26(c)(1), submits this memorandum of points and authorities in support of its motion for a protective order to shield the identities of certain non-party witnesses who may have relevant information in this case. Specifically, MGB seeks to shield the identities of (i) the people who sat on the Religious Exemption Review Committee (evaluating religious exemption requests) and the clinical panels (evaluating medical exemption requests) except for Dr. Dean Hashimoto, Ms. Ramona Nichols, and Dr. Michael Klompas who signed the relevant declarations that MGB cited in its Opposition to Plaintiffs' Motion for Preliminary Injunction (*see* Dkts. 27-30); and (ii) those employees whom MGB approved for medical or religious exemption from the vaccine mandate.[1]

---

[1] Should MGB learn that Plaintiffs seek to involve other non-litigants in this action, including those whose exemptions MGB denied but who chose not to sue or other MGB affiliates, MGB may return to the Court to seek additional protective orders, as necessary

## INTRODUCTION

This is an employment case brought by eight (8) named plaintiffs and an unincorporated association which purports to represent the interests of some 264 additional individuals who requested, but were denied, religious and/or medical exemptions from MGB's COVID-19 vaccination mandate.[2]  The Court should enter a protective order precluding Plaintiffs or the public from accessing the identities of (i) the individuals who served on the panels reviewing and rendering decisions about religious and medical exemption requests submitted by MGB affiliates, except for Dr. Dean Hashimoto, Ms. Ramona Nichols, and Dr. Michael Klompas; and (ii) the identities of those MGB affiliates whose exemption requests MGB granted.

As this Court has recognized, vaccine requirements are divisive and emotionally charged issues in our society right now.  During the November 4, 2021 preliminary injunction hearing, this Court recognized, "I think I'm going to have to issue some protective orders." *Transcript of Continued Motion Hearing for Preliminary Injunction*, Tr. 85:22-23 (November 4, 2021).  This Court recognized that "the identity of the people who have been making these decisions probably ought to be protected in light of the very difficult and tense public environment in which all of us are operating." *Id.* 86:3-6.  This Court elaborated:  "People have extraordinarily strong views on this topic, all topics really, but vaccination, in particular, and in a world in which it's easy to make Internet threats and to harass people on the Internet, I would certainly consider an appropriate degree of protection there as well." *Id.* 86:7-11 .

---

[2] At the preliminary injunction stage, this Court correctly held that the unincorporated association purporting to include over 200 members was "not likely to succeed on the merits of its claims because (i) it lacks standing and (ii) its use in this case would "effectively operate as an end-run around the strict requirements of Fed. R. Civ. P. 23." Doc. 44 pp. 9-10.  Applicants did not challenge that holding in the First Circuit. *Together Emps. v. Mass Gen. Brigham Inc.*, No. 21-1909, 2021 WL 5368216, at *1 (1st Cir. Nov. 18, 2021).  MGB's understanding is that some number of additional plaintiffs—as many as 200+—may seek to join the case individually.

The Court's concerns were well-grounded.  People are using the internet, and social media platforms in particular, to share a deluge of information – and misinformation – about the COVID-19 vaccines.  Some individuals with strong beliefs in favor of and against COVID vaccination use those same platforms to harass and threaten people.  This is not a hypothetical concern – this is the next iteration of an ongoing vitriolic campaign that has been lodged by some, even against individuals who merely are doing their jobs to evaluate vaccination exemption requests and doing their best to help the country find its way through this deadly pandemic.  Public health officials,[3] elected officials,[4] medical experts,[5] and front-line medical providers,[6] to name a few, have all been targeted.  Earlier this year, in response to an increase in online threats and harassment directed at public health workers and their families, Colorado passed a law making it illegal for individuals to disseminate personal information about public health workers and their families online for the purpose of harassment.  *See* Colorado Session Laws HB 21-1107 (2021).  Social media comments about this very case already reflect fever-pitched and disturbing rhetoric such as analogies to Nazism, and reference to use of assault weapons.

The tide of threats and harassment has already impacted those tasked with evaluating vaccination exemption requests.  In fact, this was one reason that MGB used a blinded, dedicated email address for communications about exemption requests.  *See, e.g.,* Doc. 30 p. 9 (Declaration

---

[3] National Association of County & City Health Officials Letter to Attorney General Merrick Garland, October 18, 2021, https://www.naccho.org/uploads/downloadable-resources/Letter-to-AG-Garland-on-PH-Official-Harassment-FINAL.pdf (last accessed November 29, 2021).

[4] Christopher Mele, *Man Faces Terrorism Charge After Threatening to Kill Michigan's Governor, Officials Say*, May 15, 2020, https://www.nytimes.com/2020/05/15/us/virus-michigan-whitmer-threats.html (last accessed November 29, 2021).

[5] Bianca Nogrady, *"I Hope You Die": How The COVID Pandemic Unleashed Attacks on Scientists*, October 13, 2021, https://www.nature.com/articles/d41586-021-02741-x (last accessed November 29, 2021).

[6] *Health Workers Once Saluted As Heroes Now Get Threats*, September 29, 2021, https://www.pbs.org/newshour/nation/health-workers-once-saluted-as-heroes-now-get-threats (last accessed November 29, 2021).

of Ramona Nichols ¶40, explaining that employees whose requests were denied wrote to the Religious Exemption Review Committee to express their displeasure with the denials, and that one reason that the Committee felt it was important to use the dedicated email address rather than 1:1 communications was that "[s]ome of these interactions were very tense."). The fact that the Plaintiffs who did not comply with the Vaccination Policy have now been terminated from employment, and that the parties are in litigation, will only exacerbate the tension and hostility.

To the extent that opposing counsel needs information about the education and training of the MGB exemption decision-makers to prosecute this case, as is claimed, such information can be shared in such a way that does not reveal the identities of those individuals.[7]  MGB is not trying to be difficult – it is only trying to protect its employees from the very real threat of harassment that could follow if their identities were revealed to the Plaintiffs or the public.

Similarly, MGB expects that Plaintiffs will seek discovery about employees whose exemption requests were granted.  Although MGB preserves all of its rights to object to the introduction of such comparator evidence to the extent it is not relevant or proportional, if the Court were to allow discovery of such information, the identities of those who received exemptions from MGB's vaccination mandate should not be made available to the named Plaintiffs, any potential additional plaintiffs, or the public.  As this Court itself noted at the hearing, quoted above, the rationale is obvious:  this is highly sensitive, confidential medical and/or religious information.

## RELEVANT FACTUAL BACKGROUND

MGB notified its employees in June 2021 that it planned to implement a COVID-19 Vaccination Policy (the "Vaccination Policy") under which it would require all employees to be

---

[7] MGB reserves all rights to object to discovery that is not relevant or proportional to the needs of the case, and to brief those discovery issues at the appropriate stage of the case.  *See, e.g.,* Fed. R. Civ. P. 26.

vaccinated against COVID-19 as a condition of employment.  MGB decided to implement the Vaccination Policy after considerable deliberation among its senior leadership, including world renowned experts in infectious disease and infection control.  While the world reacted to the highly contagious Delta variant, patient acuity and census increased at MGB, patients postponed needed care, and with the now-realized threat of even more transmissible, sophisticated, uncontrolled variants on the horizon, MGB determined that the Vaccination Policy was critical to keeping safe its medically vulnerable patient population, staff, and visitors, and that existing protocols were not an adequate substitute.  The Vaccination Policy was necessary to minimize staff absences to ensure an available workforce to continue to combat the ongoing public health crisis.  The Vaccination Policy was essential to maintaining patient and public trust, including so that people would timely access health care at MGB.

MGB rolled out the Vaccination Policy in August 2021, requiring that all employees receive a COVID-19 vaccination by October 15, 2021, unless approved for a religious or medical exemption.  MGB's announcement explained clearly to employees that they would be placed on unpaid leave and ultimately face termination if they did not comply with the Vaccination Policy.

MGB thoughtfully designed separate processes for employees' requests for medical or religious exemption.  A Religious Exemption Review Committee – led by a senior attorney in MGB's Office of the General Counsel and comprised of trained Human Resources professionals – developed and implemented MGB's interactive process for determining whether or not to grant each religious exemption request.  Under the leadership of MGB's Chief Medical Officer, Workplace Health and Wellness, MGB set up two clinical panels of medical experts to assess requests under the very specific guidance of the Centers for Disease Control as to what narrow set of conditions were medically contraindicated for COVID-19 vaccination.

77573233v.6

The Religious Exemption Review Committee and – in parallel – the two clinical panels, conducted careful, prompt, and thorough interactive processes to review employees' request forms, to ask for more information where warranted, to consider the employees' responses, and to make nuanced decisions as to which employees would be allowed an exemption – and which denied.

Plaintiffs' requests were denied because, after careful review, they did not meet MGB's criteria for exemption.

## LEGAL STANDARD

Rule 26(c) grants courts the discretion to issue protective orders, for good cause, to limit discovery where necessary "to protect a party *or person* from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c) (emphasis added).  A protective order is appropriate when: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit ...." Fed. R. Civ. P. 26(b)(2).  The moving party must show "good cause" by demonstrating a factual basis of potential harm.  Fed. R. Civ. P. 26(c)(1); *Voice Domain Techs., LLC v. Apple, Inc.*, No. CIV.A. 13-40138-TSH, 2014 WL 5106413, at *2 (D. Mass. Oct. 8, 2014).  This Court has "'broad discretion' to decide 'when a protective order is appropriate and what degree of protection is required'."  *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

77573233v.6

I.     **REVEALING THE IDENTITIES OF THE INDIVIDUALS ON THE EXEMPTION REVIEW PANELS WOULD PLACE AN UNDUE BURDEN ON THOSE INDIVIDUALS AND THEIR FAMILIES – A BURDEN THAT OUTWEIGHS ANY LIKELY BENEFIT**

Social media is rife with emotional and threatening dialogue about COVID-19 mitigation efforts – including vaccine mandates – and those who enforce them.  Individuals have faced – and continue to face – prosecution for making related violent threats against those who do not share their view of COVID-19 mitigation efforts.  As examples, Thomas Patrick Connally, Jr. faces up to 15 years in prison for threats he directed at Dr. Anthony Fauci and his family – stating that Dr. Fauci and his family would be "dragged into the street, beaten to death, and set on fire."[8]  In addition to the thirteen men charged with crimes related to their alleged plans to kidnap Michigan Governor Gretchen Whitmer,[9] another individual, Robert S. Tesh faced up to 20 years in prison for threatening to kill the Governor.[10]

Aware of the vitriolic backdrop that accompanies COVID policies, MGB designed an exemption review process that shielded the identities of those employees who were tasked with evaluating exemption requests.  To maintain protection for those individuals and their families – some of which include minor children – this Court should continue to shield those individuals' identities from disclosure to Plaintiffs and the public.  *See Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (reversing lower court and allowing party to proceed anonymously, holding "that the Does may expect extensive harassment and perhaps even violent reprisals if their identities are

---

[8] *Man Facing Federal Charges for Allegedly sending Threatening Emails to Dr. Anthony Fauci and Dr. Francis Collins at the National Institutes of Health*, July 27, 2021, https://www.justice.gov/usao-md/pr/man-facing-federal-charges-allegedly-sending-threatening-emails-dr-anthony-fauci-and-dr (last accessed November 29, 2021).
[9] Neil MacFarquhar, *Defendant in Plot to Kidnap Michigan Governor is Sentenced to Six Years*, August 25, 2021, https://www.nytimes.com/2021/08/25/us/gretchen-whitmer-kidnapping-plot-michigan.html (last accessed November 29, 2021).
[10] Christopher Mele, *Man Faces Terrorism Charge After Threatening to Kill Michigan's Governor, Officials Say*, May 15, 2020, https://www.nytimes.com/2020/05/15/us/virus-michigan-whitmer-threats.html (last accessed November 29, 2021).

disclosed."); *Doe v. City of Chicago*, 360 F.3d 667 (7th Cir. 2004) (holding that "[t]he fear of retaliation is often a compelling ground for allowing a party to litigate anonymously."); *June Med. Servs., LLC v. Caldwell*, No. 3:14-CV-00525-JWD (M.D. La. Aug. 28, 2014) (granting protective order, allowing four doctors who provide abortions, two of whom were parties and two of whom were witnesses, to proceed under pseudonyms because of the "potential for harassment, intimidation and violence" toward them "particularly in light of the past and present instances of such conduct…").

Recognizing the particularly fraught national divide over COVID-19 vaccination requirements, one federal court recently took the extraordinary step of allowing a group of healthcare worker *plaintiffs* challenging COVID-19 vaccination mandates to proceed pseudonymously.  *See Does 1-6 v. Mills*, No. 1:21-CV-00242-JDL, 2021 WL 4005985, at *2 (D. Me. Sept. 2, 2021).  The court took that step despite the general rule that "a case must proceed in the real names of the parties" after taking "judicial notice of the substantial public controversy currently surrounding public and private mandates requiring individuals to be vaccinated for the COVID-19 coronavirus or to provide proof of vaccination status."  *Mills*, 2021 WL 4005985, at *2.  Unlike the *Mills* plaintiffs, the non-party individuals MGB seeks to protect did not invite this action – but revealing their identities may invite retribution, harassment, and retaliation.  They have not chosen this litigation, and deserve continued protection.

The *Mills* Court declined to shield the plaintiffs' identities from the defendants in that action – reasoning that the plaintiffs "offered no credible support" for their fear of retaliation or retribution from the State defendants.  *Id.* at *3.  Here, disclosure to Plaintiffs, because of the number who purport to be associated with "Together Employees," is nearly synonymous with disclosure to the public, as a practical matter.  Plaintiffs' counsel has put forward a list of 264

8

additional potential Plaintiffs in this action – MGB cannot reasonably expect that information shared with such a large group will remain confidential, and identifying the source of any disclosure prohibited by a less protective order would be nearly impossible.  If the Court does not enter a protective order shielding the identities of these individuals, their identities will be revealed and the harm will be done: "[t]he practical effect of the [failure to enter a protective] order will be irreparable by any subsequent appeal."  *Covey Oil Co. v. Cont'l Oil Co.*, 340 F.2d 993, 997 (10th Cir. 1965) (upholding protective order restricting access to sensitive nonparty materials to counsel and independent certified public accountants), overruled on other grounds by *Boughton v. Cotter Corp.*, 10 F.3d 746, 748 (10th Cir. 1993).  If the MGB panelists' identities are revealed, the harm cannot be undone.  The fact that there is intense media interest in this case – which is in turn covered, shared, and the subject of comment on social media – only heightens the concerns about safety and harassment.

The burden of revealing the identities of the non-party members of the review committees is clear, but Plaintiffs have not articulated any likely benefit of requiring such disclosure, let alone a benefit that outweighs the heavy burden.  Plaintiffs have stated that they need to know the identities of the exemption review panelists so that they can determine whether these individuals were qualified to make exemption decisions and whether the panelists had any prior bias or motivation to deny the exemption requests.  But MGB can provide the information Plaintiffs need to make such assessments without any necessity to reveal the identities of the review committee members.

### A.    MGB's Proposal Regarding the Transmission of Relevant, Necessary Panelist Information

Specifically, MGB proposes that it provide Plaintiffs with two charts:  one for the medical exemption clinical panels and one for the Religious Exemption Review Committee.

Rather than identifying the individuals by name, MGB could identify each of these witnesses by a dedicated number (i.e. Witness 1, Witness 2…).  Using such pseudonyms, MGB could provide any discovery, such as education, training, or relevant experience when they were assigned to evaluate exemption requests.

To the extent Plaintiffs' counsel seeks to depose members of the exemption review panels, Dr. Hashimoto and Ms. Nichols have already submitted declarations (*see* Dkts. 29-30), and they can both sit for depositions about the processes.

The proposals set forth above are balanced and would allow Plaintiffs to harvest the necessary information about the training and skill of the members of the clinical panels and Religious Exemption Review Committee while protecting them and their families from an undue risk of harassment and potential harm.

## II.   REVEALING THE IDENTITIES OF THE INDIVIDUALS TO WHOM MGB GRANTED RELIGIOUS AND MEDICAL EXEMPTIONS IS AN UNNECESSARY INVASION OF THE PRIVACY OF NON-PARTIES

MGB anticipates that Plaintiffs will seek discovery about those employees who were granted vaccine exemptions.  MGB expects Plaintiffs may seek documents that would include the religious exemption forms which employees submitted (a sample of which is attached to Plaintiff's Complaint, Dkt. 1, as Exhibit C, p. 25) and the medical exemption form completed by the employee's doctor (a sample of which is attached to Plaintiff's Complaint, Dkt. 1, as Exhibit B, p. 23) – as well as any follow-up correspondence to the exemption review panel concerning those documents (a sample of such follow-up correspondence is attached to Plaintiff's Complaint, Dkt. 1, as Exhibit S, p. 70).

On those forms, employees disclosed their alleged sincerely held religious beliefs or sensitive physical or mental health medical information.  These exemption submissions necessarily contain confidential and sensitive medical and religious information about non-party

10

employees which should not be disseminated to Plaintiffs or the public. *See United States v. Bulger*, 283 F.R.D. 46, 50 (D. Mass. 2012) ("[There is] wide acceptance of the use of protective orders to prevent disclosure of private medical information" (internal quotation omitted)); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (allowing a party to proceed anonymously where a party was required to "reveal their beliefs about a particularly sensitive topic that could subject them to considerable harassment"); *Bittaker v. Woodford*, 331 F.3d 715, 726 (9th Cir. 2003) ("Courts could not function effectively in cases involving sensitive information – trade secrets, medical files [], among many others – if they lacked the power to limit the use parties could make of sensitive information obtained from the opposing party by invoking the court's authority."); *Stegall*, 653 F.2d at 186 (holding that "religion is perhaps the quintessentially private matter."). In fact, as their employer, MGB has legal obligations not to reveal these individuals' medical information.[11]

### A.  MGB's Proposal Regarding the Transmission of Any Relevant, Necessary Information About Approved Exemption Requests

Plaintiffs cannot articulate any likely benefit of MGB disclosing the identities of these other employees, let alone any likely benefit that outweighs the clear burden of revealing such sensitive information about non-parties. MGB proposes that, if the Court deems it necessary for MGB to provide such sensitive non-party documentation at all, the Court should allow MGB to redact the names and other identifying information from those documents so as to shield the identities of any employees whose exemption requests MGB granted. MGB could then provide

---

[11] U.S. Equal Emp. Opportunity Comm'n, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*: § K.4 (2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last accessed December 1, 2021) ("**Is information about an employee's COVID-19 vaccination confidential medical information under the ADA?** Yes. The ADA requires an employer to maintain the confidentiality of employee medical information. Although the EEO laws do not prevent employers from requiring employees to provide documentation or other confirmation of vaccination, this information, like all medical information, must be kept confidential…") (emphasis in original).

a chart, identifying the individuals by number (i.e. Employee 1, Employee 2…), during discovery.

The process set forth above would allow Plaintiffs discovery of whatever material the Court deems relevant and proportional regarding those employees whose exemption requests MGB granted, without exposing confidential and personally sensitive medical and religious information about employees who are not parties to this action.

## Conclusion

For all of these reasons, this Court should grant MGB's motion to protect the identities of (i) the individuals comprising the religious and medical exemption review panels and (ii) the MGB employees whose exemption requests MGB granted.

**Dated:** December 6, 2021                    Respectfully submitted,

MASS GENERAL BRIGHAM INCORPORATED

By its Attorneys,

*/s/ Lynn A. Kappelman*
Lynn A. Kappelman (BBO# 642017)
Katherine E. Perrelli (BBO# 549820)
Kristin McGurn (BBO# 559687)
Dawn Reddy Solowey (BBO#567757)
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
kperrelli@seyfarth.com
lkappelman@seyfarth.com
kmcgurn@seyfarth.com
dsolowey@seyfarth.com
TEL: (617) 946-4800
FAX: (617) 946-4801

**<u>CERTIFICATE OF SERVICE</u>**

I, Lynn A. Kappelman, certify that on December 6, 2021, I caused a true and accurate copy of the foregoing document to be filed and uploaded to the CM/ECF system.

*/s/ Lynn A. Kappelman*
Lynn A. Kappelman
