## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **TOGETHER EMPLOYEES, by** | ) | |
| **individual representatives,** | ) | |
| **ROBERTA LANCIONE** | ) | |
| **JOYCE MILLER, MARIA DIFRONZO,** | ) | |
| **MICHAEL SACCOCCIO,** | ) | |
| **ELIZABETH BIGGER,** | ) | |
| **NATASHA DICICCO,** | ) | |
| **NICHOLAS ARNO and** | ) | **CIVIL ACTION NO.** |
| **RUBEN ALMEIDA,** | ) | **1:21-cv-11686-FDS** |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MASS GENERAL BRIGHAM** | ) | |
| **INCORPORATED** | ) | |
| **Defendant** | ) | |

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

## I.   INTRODUCTION

This Court made clear to point out that "statements by counsel are not part of the evidentiary record" in its Memorandum and Order denying plaintiffs' Motion for Preliminary Injunction. (Mem. and Order, ECF 45, p. 19). This principle applies to the defendant as well, yet the defendant is asking this Court handicap the plaintiffs' ability to conduct crucial discovery without providing this Court any evidence as to the necessity of a protective order. Defendant suggests, without a shred of evidence that harassment "could follow" if the identities of crucial witnesses were to be provided to the plaintiffs. (Def. Mem., ECF 49, p. 4). It also states, again without a shred of evidence, that these defense witnesses have already been "impacted" by the "tide of threats and harassment." (Def. Mem., ECF 49 at p. 3). To establish the

1

accusation that plaintiffs have already "harassed" defense witnesses, defendant relies on Ramona Nichols' affidavit stating that employees whose religious exemptions were denied emailed the committee and "express[ed] their displeasure with the denials" and that "some of these interactions were very tense." (Def. Mem., ECF 49, p. 4, quoting Nichols Aff. ¶). The very nature of litigation is an adversarial process. It is doubtful that many employees were happy to learn that their religious accommodations were denied. Defendant is comparing "tense conversations" to "analogies to Nazism, and reference to use of assault weapons." (Def. Mem., ECF 49, p. 3).

The defendant is thus effectively asking this Court to adopt a rule in which incredibly restrictive protective orders should be granted if there exists tension between the parties over their positions. There is no supporting authority for what defendant is requesting this Court.

## II.   DEFENDANT HAS NOT MET ITS BURDEN OF DEMONSTRATING THE EXISTENCE OF GOOD CAUSE FOR A PROTECTIVE ORDER.

Fed. R. Civ. P. 26(b)(1) provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case… Information within this scope of discovery need not be admissible in evidence to be discoverable."

It is the defendant's burden to demonstrate that good cause exists. "The party or person seeking a protective order, including an order limiting another party's right to disseminate information obtained in discovery, has the burden of

demonstrating the existence of good cause." *Green v. Cosby*, No. 14-cv-30211-MGM, 2015 WL 9594287, at *4-5 (D. Mass. Dec. 31, 2015); *Baker v. Liggett Grp., Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990) (citing *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 6-7 (1st Cir. 1986)). "A finding of good cause **must be based on a particular factual demonstration of potential harm, not on conclusory statements**." *Baker*, 132 F.R.D. at 125 (quoting *Anderson*, 805 F.2d at 7). Emphasis added.

A case directly on point to ours, *Theidon* v. *Harvard University*, 314 F.R.D. 333, 336 (D. Mass. Feb. 4, 2016), reviewed a Title VII discrimination and retaliation claim wherein the plaintiff sought the names of Harvard's committee members and individuals involved in the process of reviewing her tenure application, along with those whose work was used to compare hers in the committee's determination. Harvard sought redaction of the outside reviewers' information, redaction of the names of the scholars to whom plaintiff was compared and and attorney's eyes only ("AEO") designation regarding the identity of the *ad hoc* committee convened to consider the plaintiff's tenure, which consisted of ten individuals, including three from other universities. In other words, an almost identical, only ***less*** drastic request than the defendant is requesting in our current case.

The Court denied all three requests. In fact, the Court stated that Harvard "makes a strong argument" for confidentiality, however balanced against the plaintiff's "**need to access evidence supporting her allegations of discrimination and retaliation**," including, among many others "as with any witness, Theidon seeks to identify any biases among those who evaluated her." *Id.*

The Court rightly found that "shielding identifying information about the letter writers, both external and internal, through the discovery process handicaps Theidon's ability to marshal facts that support her claims and raise issues necessitating a trial, important components of both summary judgment and trial." *Id*, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (requiring non-moving party to "set forth specific facts showing that there is a genuine issue for trial").

The Court found that the information would be **"essential to Theidon's effort to acquire probative evidence"** and that **"[t]hwarting Theidon's case through discovery and summary judgment by denying her access to evidence possessed by her adversary is tantamount to thwarting her case at trial**." *Id.* (Emphasis added).

Defendant further asserts that "[p]laintiffs have not articulated any likely benefit of requiring such disclosure, let alone a benefit that outweighs the heavy burden." (Def. Mem., ECF 49, p. 9). First, Rule 26(b)(1) entitles the plaintiffs to relevant evidence, without the requirement of an "articulation" as to its benefit to defendant. Second, this is incorrect. With respect to the relevance of the evidence, it is absurd to suggest that provision of the identities of and the ability to examine the very people who made the determination to deny religious accommodations for what the defendant itself has suggested in its opposition to plaintiffs' Motion for Preliminary Injunction, is a very fact intensive process. (Def. Mem., ECF 7, p. 17 at n. 7: "[c]laims asserted by unnamed plaintiffs would require personal participation

by, and unique evidence from, each plaintiff because each has a unique alleged religious belief or disability and each employee's interactive process with MGB was unique."). These individuals who made the determination to deny religious accommodations for the plaintiffs have their own biases, interests, motives and beliefs just like anyone else. Examining their credentials, work history and those aforementioned beliefs, motives, etc. is crucial to preparing plaintiffs' case[1]. Third, it bears repeating that defendants have the burden of showing that good cause exists. "**A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements**." *Anderson,* supra., quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2035, at 264–65 (1970); *see also General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204, 1212 (8th Cir.1973) (burden on movant to make specific demonstration of necessity for protective order), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); *Koster v. Chase Manhattan Bank,* 93 F.R.D. 471, 479–80 (S.D.N.Y.1982) ("the court must find that definite criteria have been satisfied before issuing a protective order"); *cf. Schlagenhauf v. Holder,* 379 U.S. 104, 118–19, 86 S.Ct. 234, 242–43, 13 L.Ed.2d 152 (1964) (good cause under Fed.R.Civ.P. 35 must be based on more than "conclusory allegations").

Defendant's Motion for Protective Order should be denied, as all that it has offered only suggestions as to what it believes is the general tenor of the national

---

[1] This also applies to those whose accommodations were provided. Information such as the religious belief and/or medical accommodation that was accepted, the employee's role, status, connection to management and other factors are crucial to preparing our case.

conversation on the COVID vaccines and subsequent policies. Its Memorandum is completely void of anything that would suggest that plaintiffs would commit the sort of acts that defendant has presented to the Court. A protective order cannot be awarded to a party simply upon a showing that somewhere in the country an individual committed a crime based on a somewhat related topic. Anthony Fauci is not a party to this case, nor does he have any involvement in it. Gretchen Whitmer is not a party to this case, nor does she have any involvement in it. Also, the plaintiffs aren't even challenging the policy, which seems to be something that the defendant refuses to accept. They are, however, challenging the religious discrimination committed by the defendant and its agents, whom defendant wishes to keep a secret. In other words, the examples provided by defendant do not even apply, as this is a religious discrimination case and not a vaccine case. Further, defendant did not bring up why it would be a burden for those who actually made the determinations regarding plaintiffs' accommodations to be identified and examined, but not Dr. Klompas, Ramona Nichols and Dr. Hashimoto, whose names are published currently and who also work for defendant.

### III.   DEFENDANT HAS CITED NO AUTHORITY THAT WOULD ALLOW A PROTECTIVE ORDER UNDER THESE CIRCUMSTANCES.

Defendant's attempt at requesting the most extreme limitation in hopes that this Court will consider an AEO designation to be some form of middle ground has no basis in law. Nearly every case cited within its Memorandum has no application to the facts at hand.

First, not a single case cited by defendant issued a protective order that concealed identities from parties other than for trade secrets. According to **defendant's own authority**:

1. *Doe* v. *Stegall*, 653 F.2d 180 (5th Cir. 1981), the plaintiffs brought specific exhibits which contained actual threats of violence and retaliation. Further "[t]hey agreed to disclose their identities to the defendants and to the Court," followed by a footnote stating, "[t]he plaintiffs urge that this procedure gives both the court and the defendants every opportunity to scrutinize their standing to sue and to proceed with any necessary discovery."

2. *Doe v. City of Chicago*, 360 F.3d 667 (7th Cir. 2004), the court stated that "there is no indication of *any* basis for [plaintiff] proceeding [anonymously]. She merely filed the complaint anonymously, there was no objection, and the judge conducted no inquiry into the propriety of anonymity."

3. *June Med. Servs., LLC v. Caldwell,* No. 3:14-CV-00525-JWD (M.D. La. Aug. 28, 2014), the plaintiffs demonstrated direct threat of physical violence at their workplaces and showed instances of abortion providers being killed. The court stated in its Order, "[t]he Court agrees that **the circumstances of this case do not support withholding the names of the John Doe Doctors from the Court or the named defendants.**" *Id.* at ECF 24, p. 4. In other words, even under real threat of death, the

Court allowed the parties to know the identities of those under pseudonym.

4. *Does 1-6 v. Mills,* No. 1:21-CV-00242-JDL, 2021 WL 4005985, at *2 (D. Me. Sept. 2, 2021). Defendants use this case as authority to support their assertion that a protective order should be allowed, then distinguish this authority claiming that it should not be applied here, because the Court allowed the parties to know the identities of those under pseudonym.

5. *U.S. v. Bulger,* 283 F.R.D. 46 (D. Mass. 2012), the Court only prevented the public and media from accessing the discovery under protective order. Parties to the litigation were not prevented from seeing it.

6. *Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004), the Court allowed the government defendant access to the identifying information, protecting the identity of the plaintiffs from the public, due in part to a specific threat of harassment toward the actual plaintiffs in the lawsuit in a local newspaper.

**Not a single case** cited by defendant in its Memorandum provides any authority for this Court to do what defendant proposes that it do. Even the AEO cases deal specifically with trade secrets. Thus, the Court should not consider even AEO on this matter, as "[a]ttorneys' eyes only disclosure is appropriate only in limited circumstances, such as cases involving trade secrets, **because it hinders the plaintiff's ability to aid counsel in review of the evidence and to determine her litigation strategy in light of it**." *Ragland v. Blue Cross Blue*

*Shield of N.D.*, No. 1:12–cv–080, 2013 WL 3776495, at * 1 (D.N.D. June 25, 2013);

see also *Sexual Minorities of Uganda v. Lively*, No. 3:12–30051–MAP, 2015 WL

4750931, at * 5 (D.Mass. Aug. 10, 2015) (citing defendant's right to participate in

his defense in denying attorneys' eyes-only designation, calling it a "**drastic**

**remedy given its impact on the party entitled to the information.**" emphasis

added).

## IV.   CONCLUSION

Defendant's conclusory statements and internet articles do not amount to a

"particularized and compelling need for confidentiality" in this particular case. *Id.*

Plaintiffs wholeheartedly oppose any measure that would prevent them from

obtaining necessary and crucial information in discovery.

Plaintiffs therefore request that this Court DENY defendant's motion.

> _____/s/ Ryan P. McLane_____
> Ryan P. McLane
> Lauren Bradford
> McLane & McLane, LLC
> BBO # 697464
> 269 South Westfield Street
> Feeding Hills, MA 01030
> (413) 789-7771
> ryan@mclanelaw.com
> lauren@mclanelaw.com

## CERTIFICATE OF SERVICE

I do hereby certify that a true copy of the above document was served upon
the parties and/or attorneys of record by electronic mail on December 13, 2021.

> _____/s/ Ryan P. McLane_____