UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TYLER ADAMS, ROSEANN McNAMARA, MICHELLE ORFANOS, DR. SARAH SHULMAN, JAMIE STEVERMAN, <br>                 Plaintiffs, <br> v. <br> MASS GENERAL BRIGHAM, INC., <br>                 Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 1:21-11686-FDS |

## MEMORANDUM OF LAW IN SUPPORT OF *PRO SE PLAINTIFFS*' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

### INTRODUCTION

Under Fed. R. Civ. P. Rule 15 and Local Rule 7.1(b)(1), this memorandum is offered in support of the MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT filed contemporaneously with this by Plaintiffs Tyler Adams, Roseann McNamara, Michelle Orfanos, Dr. Sarah Shulman, and Jamie Steverman ("*Pro Se Plaintiffs*").

The original COMPLAINT in this case was filed against the defendant ("MGB") October 17, 2021 (Dkt. No. 1). The AMENDED COMPLAINT was filed December 17, 2021 (Dkt. No. 58). The AMENDED COMPLAINT CORRECTED was filed January 14, 2022 (Dkt. No. 61). During the years of 2022 and 2023, Phase I Discovery occurred including several depositions and other exchange of Discovery items. During 2024, extensive time was invested by counsels for all parties in settlement negotiations, which resulted in a STIPULATION of Dismissal

entered on October 21, 2024 (Dkt. No. 239) disposing of 216 plaintiffs in this case. Of the eight (8) remaining plaintiffs, five (5) are in a *pro se* posture and three (3) are represented by counsel. At times throughout 2024, the *Pro Se Plaintiffs* were asked by the defense counsel, and by Attorney McLane as plaintiffs' counsel, and by this Court to wait for settlement discussions to end, including extensions and a 90-day stay, before engaging in further filings regarding the individual claims of *Pro Se Plaintiffs*.

Under Fed. R. Civ. P. Rule 15(a)(2), "The court should freely give leave [to amend a complaint] when justice so requires." Also, please note Rule 15(d), which states that a party may move the Court to permit a supplemental complaint to be served for any transaction or event that occurred after the date of the latest amended complaint.

The *Pro Se Plaintiffs* received deposition transcripts from defense counsel on December 23, 2024 elucidating newly discovered facts not known to them previously.

Plaintiff Orfanos' rights were violated in a new cause of action by MGB in early 2024 resulting from a second employment, religious exemption process, and second termination. The newly discovered facts in deposition transcripts recently delivered to the *Pro Se Plaintiffs* combine with the new fact pattern of Plaintiff Orfanos' second termination to clearly elucidate that the *Pro Se Plaintiffs'* rights, including freedom of religion, due process of law, and equal protection of the laws were violated through a fraudulent religious exemption process held out to them by MGB. The *Pro Se Plaintiffs* will show that MGB is so entangled with state and federal government finances and directives that the MGB business cannot financially survive without government funding or licensing. Further, a member of the MGB Board of Directors, Rochelle Walensky, left MGB to become Director of the Centers for Disease Control and Prevention

("CDC") only months before the vaccine mandate was enacted in 2021. MGB admitted in deposition that the COVID vaccine mandate resulted from a directive by the CDC, which was enforced through state action. MGB unmistakably qualifies as a "state actor," bolstering the 42 U.S.C. § 1983 deprivation of rights claims in the proposed SECOND AMENDED COMPLAINT.

Enlightened by the deposition transcripts and other evidence recently received from MGB, all five (5) *Pro Se Plaintiffs'* rights were clearly violated in fraudulently constructed and implemented religious and medical exemption processes.

## **RELEVANT PROCEDURAL HISTORY**

1. On October 17, 2021, Attorney Ryan McLane ("Attorney McLane"), filed the original COMPLAINT (Dkt. No. 1) in this case, representing a group "Together Employees" and seven (7) individuals, totaling 229 plaintiffs (Dkt. No. 1, ¶ 6) for claims involving violations of Title VII and Americans with Disabilities Act ("ADA").

2. On December 17, 2021, Attorney McLane, in accordance with Joint Motion for Scheduling Order (Dkt. No. 54), filed the plaintiffs first AMENDED COMPLAINT (Dkt. No. 58) dismissing "Together Employees" and an individual, and naming 224 individuals as plaintiffs including the *Pro Se Plaintiffs*.

3. On January 14, 2022, Attorney McLane filed the plaintiffs first AMENDED COMPLAINT CORRECTED (Dkt. No. 61) naming 224 individuals as plaintiffs including the *Pro Se Plaintiffs*.

4. Throughout winter, spring, and summer of 2022, numerous withdrawals, appearances, dismissals occurred in this case.

5. On March 15, 2022, an ORDER for JOINT MOTION was entered. (Dkt. No. 72) Phase I Discovery interrogatories was laid out along with exhibit Questionnaires for each party.

6. On July 15, 2022, a JOINT MOTION to Extend Discovery completion date to October 1, 2022 was entered. (Dkt. No. 108)

7. On February 17, 2023, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and supporting documents were entered. (*See* Dkt. No.s 148, 149, 150)

8. On September 28, 2023, this Court entered a MEMORANDUM AND ORDER regarding summary judgment as DENIED for the plaintiffs among other findings and orders.

9. On November 11, 2023 Attorney McLane filed a Motion to Withdraw as counsel for Plaintiff Orfanos. Plaintiff Orfanos maintains that she asked Attorney McLane for an accounting of the payments he received from GiveSendGo and directly from the plaintiffs. He then withdrew as her counsel and left her without representation, never accounting for the finances of the case.

10. On November 28, 2023, this Court granted McLane's motion to withdraw (*See* Docket No. 179) effective 14 days from the order, at which time Plaintiff Orfanos would be deemed to be proceeding *pro se* if no attorney appears within those 14 days. (*See* Docket No. 180)

11. On January 13, 2024, Attorney Richard Chambers ("Attorney Chambers") filed a NOTICE OF APPEARANCE to represent Plaintiff Orfanos.

12. On March 19, 2024, Attorney Chambers filed a COMPLAINT with the Massachusetts Commission Against Discrimination ("MCAD") on behalf of Plaintiff Orfanos for her second employment at MGB from November 2023 to February 2024. (*infra* ¶ 45 - ¶ 65)

13. On or about April 5, 2024, the MCAD complaint was served upon Brigham and Women's Hospital. MCAD Docket Number: 24BEM00941. EEOC Number: 16C-2024-01477.

14. On June 19, 2024, Attorney Chambers filed an ASSENTED TO MOTION TO WITHDRAW as counsel for Plaintiff Orfanos leaving her in a *pro se* litigation posture. (Dkt. No. 209)

15. On June 21, 2024, Attorney Chambers' motion to withdraw was granted and ordered. (Dkt. No. 210)

16. On July 11, 2024, Plaintiff Orfanos filed her Notice to appear *Pro Se*. (Dkt. No. 213)

17. Throughout 2024, there were numerous appearances and withdrawals of counsels and stipulated dismissals of plaintiffs.

18. On July 16, 2024, Plaintiff Orfanos contacted MGB to obtain labeled and organized Discovery material rather than the pile of documents previously unlabeled.

19. On July 16, 2024, MGB provided the Discovery material with labels and organized.

20. On July 19, 2024, Plaintiff Orfanos attempted to engage with opposing counsel and send a list of interrogatories to MGB, some of which pertained to her 2nd employment.

21. On July 19, 2024, MGB replied via email, "You do not have our permission to serve any discovery, and doing so would be improper under the Court's scheduling order."

22. On September 12, 2024, during a STATUS CONFERENCE, Plaintiff Orfanos asked to be part of the negotiations for settlement. MGB declined to include Plaintiff Orfanos in negotiations. The Court asked Plaintiff Orfanos to wait until after negotiations and then decide if she would take the settlement offer or continue *pro se*. (Dkt. No. 231)

23. On September 16, 2024, Attorney McLane moved this Court to withdraw as counsel for Plaintiff Sarah Shulman, while Plaintiff Orfanos was already in a *pro se* posture. (Dkt. No. 232)

24. On September 26, 2024, this Court entered an order granting Attorney McLane's motion to withdraw from representation of Plaintiff Shulman. (*See* Docket No. 234)

25. On September 27, 2024, Attorney Kristin McGurn representing the Respondent Brigham and Women's Hospital, filed a motion to dismiss Plaintiff Orfanos' MCAD complaint.

26. On October 9, 2024, Plaintiff Orfanos filed an opposition memorandum in response to the defendant's motion to dismiss the MCAD complaint.

27. On October 21, 2024, there were 216 plaintiffs who filed a STIPULATION OF DISMISSAL. (Dkt. No. 239)

28. On October 22, 2024, Attorney McLane entered a motion to withdraw from representation of Plaintiffs Tyler Adams, Roseann McNamara, and Jamie Steverman, three of the *Pro Se Plaintiffs*, while Plaintiffs Orfanos and Shulman were already in a *pro se* posture. (Dkt. No. 240)

29. On November 19, 2024, Plaintiff Shulman filed a NOTICE OF APPEARANCE *Pro Se*. (Dkt. No. 245)

30. On November 25, 2024, Plaintiffs Tyler Adams and Jamie Steverman filed NOTICE OF APPEARANCE *Pro Se*. (Dkt. No.s 248 and 250, respectively)

31. On December 9, 2024, Plaintiff Roseann McNamara entered a NOTICE OF APPEARANCE *Pro Se* in this matter. (Dkt. No. 252)

32. On December 23, 2024, all five Pro Se Plaintiffs received six of nine known deposition transcripts from MGB. Discovery materials combined with Plaintiff Orfanos' second employment (2023-2024) elucidated that MGB fraudulently misrepresented its religious exemption process, MGB was directed by the Commonwealth of Massachusetts to impose a vaccine mandate, MGB favored at least three employees with overturned denials via an appeal (despite claiming no appeals existed), MGB implemented a "new process" in 2021 that contradicted Orfanos' later employment experience, and MGB violated religious freedom by favoring certain religions while overly scrutinizing others.

33. On January 22, 2025, Attorney McLane filed NOTICE of WITHDRAWING LIEN on the cases of Plaintiffs McNamara, Shulman, and Steverman. (*See* Dkt. No. 261) When the *Pro Se Plaintiffs* were attempting to find an attorney to represent them, several attorneys said that it was the lien that caused them to decline representation.

34. Throughout January 2025, Plaintiff Orfanos and other *Pro Se Plaintiffs* sought from MGB access to the missing Discovery material only to be rejected due to the issue of the Protective Order.

35. On or about February 1, 2025, Plaintiff Orfanos believed she had exhausted all administrative and procedural pathways and now seeks the most economic judicial solution, which is to amend the complaint. And it follows that the other *Pro Se Plaintiffs* also must now amend.

## RELEVANT NEW FACTS

36. On or about September 2023, Plaintiff Orfanos applied for employment with the Brigham & Women's Hospital.

37. On September 26, 2023, Brigham's & Women's Hospital offered Plaintiff Orfanos a nurse position in the emergency room float pool. The initial start date was to be October 30, 2023.

38. On October 10, 2023, during the on-boarding process, Plaintiff Orfanos sent an email to Occupational Health Nurse Clinician Frank Strange RN, stating her long-standing religious exemptions to vaccinations and requesting the exemption forms.

39. On or about October 10, 2023 Frank Strange RN, emailed Plaintiff Orfanos stating he had reviewed her immunization records. Strange requested a tuberculosis test and Tdap vaccine documentation. Information regarding their "flu shot" mandate was included with no mention of COVID vaccines.

40. On October 16, 2023, Plaintiff Orfanos submitted a religious flu exemption form.

41. On October 24, 2023, Plaintiff Orfanos reached out again to occupational health services asking, "Is there anything else needed on my end?"

42. On October 24, 2023, the email reply from occupational health stated, "we are still waiting on your approval for a flu exemption."

43. On October 27, 2023, Plaintiff Orfanos received an email from Robert Weinfeld stating they would "have to push the start date since the flu exemption request was still pending." Again, there was no mention of the Covid vaccine.

44. On October 30, 2023, Plaintiff Orfanos was granted a religious exemption for the flu vaccine from the MGB Religious Exemptions Committee.

45. On October 31, 2023, Plaintiff Orfanos received a revised offer letter with a new start date of November 13, 2023.

46. On November 8, 2023, Plaintiff Orfanos again reached out to occupational health confirming the new start date and again asking if there was anything else they needed.

47. On November 8, 2023, Plaintiff Orfanos received a reply email from Riley Geary stating, "the only remaining thing for you to do is finish up the I-9. Other than that you are all set to go!"

48. On November 13, 2023, Plaintiff Orfanos started working in the emergency room at Brigham and Women's Hospital, owned by MGB.

49. On or about January 4, 2024, Plaintiff Orfanos received a call from Allison Webber stating Plaintiff Orfanos would be placed on leave and asked to call HR, per Andy Gottlieb, Executive Director, Occupational Health Services, who said there was an "oversight" regarding her Covid vaccination status directing her to request a religious exemption.

50. On January 4, 2024, Plaintiff Orfanos submitted a religious exemption for the Covid 19 vaccination.

51. On January 8, 2024, additional information was requested from Plaintiff Orfanos by the exemption committee.

52. On January 9, 2024, Plaintiff Orfanos submitted the additional information.

53. On January 10, 2024, Plaintiff Orfanos received an email from MGB's Vaccine Exemption Committee. "Attached is a copy of your 2021 exemption request which appears to be in conflict with your current request. Please provide an explanation by Friday January 12th 5:00 PM"

54. On January 12, 2024, Plaintiff Orfanos replied with an explanation of her sincerely held belief that explained that there is no conflict.

55. On January 18, 2024, Plaintiff Orfanos was emailed by MGB's Exemption Committee stating her request for a COVID vaccine religious exemption was DENIED.

56. On February 2, 2024, Elizabeth J. Torres Senior Business Partner, Human Resources spoke to Plaintiff Orfanos informing her of her termination.

57. On February 6, 2024, after terminating Plaintiff Orfanos a second time, MGB, through Torres, finally sent the COVID vaccination exemption policy.

## **LEGAL STANDARDS**

Under Fed. R. Civ. P. 15(a)(2), "The court should freely give leave [to amend a complaint] when justice so requires." Also, please note Rule 15(d), which states, "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

In the Supreme Court decision of *Foman v. Davis*, 362 U.S. 178 (1962), it was stated, "In the absence of … undue delay, bad faith …, repeated failure to cure deficiencies …, undue prejudice to the opposing party …, futility …, etc.—the leave sought should, as the rules require, be 'freely given.'" The decision further explains that while the decision to grant leave to amend is in the discretion of the Court, refusal without justification for denial is "not an exercise of discretion," but rather an abuse of discretion. *id*. The standard is a liberal standard.

Fed. R. Civ. P. 42(a), states, "If actions before the court involve a common question of law or fact, the court may: … (2) consolidate the actions …" This was recently clarified on point in the Supreme Court in *Hall v. Hall*, 584 U.S. 59 (2018), in which Chief Justice Roberts wrote, "From the outset, we understood consolidation not as completely merging the constituent cases

into one, but instead as enabling more efficient case management while preserving the distinct identities of the cases and the rights of the separate parties in them."

Under Fed. R. Civ. P. 23, "… a class may sue … as representative parties on behalf of all members only if: (1) the class is so numerous …; (2) there are questions of law or fact common to the class; (3) the claims … are typical of … the class; and (4) **the representative parties will fairly and adequately protect the interests of the class**."

## ARGUMENT AND ANALYSIS

All arguments below are showings of "good cause" to grant leave to file a SECOND AMENDED COMPLAINT.

What would happen in the alternative is important to consider in evaluating this motion. The most efficient, judicially economic solution lies in allowance of a SECOND AMENDED COMPLAINT.

In the alternative, Plaintiff Orfanos has standing to file a whole new lawsuit (complaint). She applied for a nursing job with MGB in October 2023, submitted a flu religious exemption application, which was granted, and asked if there was anything else she needed to provide. MGB said she was all set. Plaintiff Orfanos began working at MGB again on November 13, 2023. On January 4, 2024, nearly two (2) months later, HR contacted Plaintiff Orfanos. They said she did not have a COVID vaccine exemption on file. She submitted a COVID religious exemption request. MGB denied her COVID vaccine religious exemption despite having just approved her flu vaccine religious exemption. Plaintiff Orfanos was terminated in a second cause of action on February 2, 2024. (¶ 43 - ¶ 63) MGB's grant to Plaintiff Orfanos of a flu exemption,

followed by denial of a COVID exemption only two months later evinces MGB's exemption request evaluation process to be fraudulent, especially in context of the newly discovered deposition transcripts in which MGB relied upon the narrative of a "new process" in order to deny longtime recipients of religious exemptions for flu vaccine mandates.

During the course of a new lawsuit, there would be many questions of law and fact redundantly discovered, filed, deposed, questioned, produced and case managed when measured against the current case. Some of the same witnesses would be redundantly deposed and served interrogatories. New information from such a new Discovery would be fair game for the other four (4) *Pro Se Plaintiffs* on a different case management timeline. This "new lawsuit" alternative implementation would significantly and negatively affect judicial economy for this Court and for all parties to this case. Fed. R. Civ. P. 60 (b) Relief from Judgment might even be available to many plaintiffs if the alternate scenario new lawsuit produces more facts newly discovered. Surely, cost avoidance begs for allowance of this SECOND AMENDED COMPLAINT.

A SECOND AMENDED COMPLAINT will make use of the massive amount of time, evidence, and case management already invested three (3) years into this case by this Court and by all parties. Amending will start from more than halfway through the litigation process, which is far better than starting from the beginning with an alternative new lawsuit.

To be clear, Plaintiff Orfanos absolutely has standing for a new cause of action, and all five (5) *Pro Se Plaintiffs* have very recently discovered facts, which, under Rule 15, allow either amending or supplementing a complaint, though amending is the more efficient option.

In addition to the judicial economy argument just made, below are further analyses in context of the legal standards.

**a. Rule 15(a)(2) "when justice so requires"**

Rule 15(a)(2) reads that leave to amend should be "freely given … when justice so requires," which is known to be at the "discretion" of the Court, effectively being an "equitable" decision. A balance of equities should be performed on each of the legal standards herein. And public interest analyses should be performed relative to the Court's economy and case management. The *Pro Se Plaintiffs* argue that they were caught in the undertow of case management judicial economy to the benefits of the Court, MGB, and counsel for more than 200 consolidated plaintiffs in the past three (3) years. Justice and equity now require balancing where there is still an imbalance to the detriment of the *Pro Se Plaintiffs*.

**b. Rule 15(d) "event … after date of pleading to be supplemented"**

Rule 15(d) prose should weigh upon a balance of equities. In the alternative to amending or filing a new lawsuit, there is standing for a supplemental complaint given the recently discovered facts in January 2025 and Plaintiff Orfanos' second termination fact pattern, both of which occurred since the AMENDED COMPLAINT CORRECTED of January 2022.

**c. *Foman v Davis* "No Undue Delay"**

*Foman v. Davis*, 362 U.S. 178 (1962) states that leave to amend should be freely given "in the absence of … undue delay." On February 18, 2025, at the first status conference since learning of deposition testimony that contradicts facts from Plaintiff Orfanos' new cause of action, the *Pro Se Plaintiffs* timely requested to move the Court for leave to amend.

On December 23, 2024, MGB delivered 6 of 9 deposition transcripts to the *Pro Se Plaintiffs*. In January 2025, the *Pro Se Plaintiffs* pored over 6 deposition transcripts, and were "shocked and dismayed" to discover disparate treatment they received in adjudication of their exemption requests.

MGB bears some responsibility for any delay from the time transcripts were first delivered to the *Pro Se Plaintiffs'* prior counsel in 2022 and 2023 until the December 23, 2024 delivery to the *Pro Se Plaintiffs*. MGB requested the Protective Orders, which are the reason why the *Pro Se Plaintiffs* did not see the deposition transcripts until recently. The *Pro Se Plaintiffs* acted without delay in examining them. In the Court's analysis, either 1) there is no undue delay where the *Pro Se Plaintiffs* acted swiftly since recently discovering facts from deposition transcripts or 2) the delay between first delivery of transcripts to plaintiffs' counsel in 2022 and 2023 is justified by MGB's own Protective Order requests that put a chill on plaintiffs' inclination to even view the transcripts. In fact, MGB still withholds three (3) deposition transcripts and perhaps other discovery material. How can any delay be then ascribed to the *Pro Se Plaintiffs*? There is no undue delay preventing leave to be freely given. This Court has ordered that a Magistrate judge be assigned to straighten out the Protective Order issue.

**d. *Foman v Davis* "No Bad Faith or Dilatory Motive"**

Leave to amend should be freely given "in the absence of … bad faith or dilatory motive." *id*. Given the level of evidence discovered and given Plaintiff Orfanos' new cause of action, there is no bad faith or dilatory motive. The *Pro Se Plaintiffs* are merely asserting their Article III Section 2 rights, First Amendment right to petition for redress, and Fourteenth amendment right to procedural due process. This "bad faith" prong clearly fails.

**e. *Foman v Davis* "No repeated failure to cure deficiencies"**

Leave to amend should be freely given "in the absence of … repeated failure to cure deficiencies." *Id*. The leave to amend sought is only the second amended complaint, where the first amended complaint was more than three (3) years ago. Thus, the characterization of "repeated failure" now would be a failure of reasonableness in an equitable analysis.

**f. *Foman v Davis* "No undue prejudice to the opposing party"**

Leave to amend should be freely given "in the absence of … undue prejudice to the opposing party." *Id*. Plaintiff Orfanos has a new cause of action. She exhausted administrative remedies through MCAD, which is still pending, and which cannot be waited for any longer.

MGB faces no more of a threat from the SECOND AMENDED COMPLAINT than they would from a whole new lawsuit. The incremental Discovery resulting from a SECOND AMENDED COMPLAINT is a fraction of what would be allowed in an alternative lawsuit beginning anew. In such an alternative new lawsuit scenario, fairness and equity would require a stay for the other four (4) *Pro Se Plaintiffs* as Plaintiff Orfanos' new action would produce Discovery in parallel to the present case.

A SECOND AMENDED COMPLAINT will not unfairly burden MGB when compared to any alternative scenario within the rights of the *Pro Se Plaintiffs* and Plaintiff Orfanos. The Constitutional right to petition for redress reigns over the burden of incremental discovery that comes with a new cause of action. Amending is the most judicially economic solution.

**g. *Foman v Davis* "Amendment Is Not Futile"**

Leave to amend should be freely given when an amendment is not futile. *Id*.

Given that the claims in the existing first AMENDED COMPLAINT withstood Fed. R. Civ. P. 56 Summary Judgment and were not even challenged by Rules 12(b)(1) or 12(b)(6), there cannot be a frivolous nature to the new facts and new cause of action, which is a similar fact pattern to the first cause of action. *Lujan*'s three prongs are satisfied in the present complaint, *ergo* must be satisfied in the SECOND AMENDED COMPLAINT. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). The new counts added in the SECOND AMENDED COMPLAINT will be plausible on their face given the new facts pled. The SECOND AMENDED COMPLAINT is not futile and will withstand a dismissal motion under the *Iqbal* and *Twombly* standards. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Futility" fails an equity test for denial of leave to amend.

**h. *Hall v Hall*, Rule 42 Consolidation, "not completely merging", "enabling efficient case management", "preserving distinct case identities", "preserving rights of separate parties"**

Since this case could not be certified as a class under Fed. R. Civ. P Rule 23 "Class Actions" due failures of "commonality" and "typicality," the parties and court agreed to consolidate more than 200 cases under Rule 42 without any test of "adequacy."

Consolidation occurs mainly for judicially economy. Since there was one common defendant, MGB, consolidation made perfect sense to avoid redundancy and administrative chaos. However, the Supreme Court recently made clear the pitfalls that might ensue from such a large consolidation, "**From the outset, we understood consolidation not as completely merging the constituent cases into one, but instead as enabling more efficient case management while preserving the distinct identities of the cases and the rights of the separate parties in them**." *Hall v. Hall*, 138 S. Ct. 1118 (2018)

The *Pro Se Plaintiffs* individually asked their counsel several times throughout the case to consider the individual aspects of their cases including damages, evidence favorable to the plaintiff, evidence incriminating to the defendant, and objectives of the litigation. The *Pro Se Plaintiffs* were all rebuffed as Attorney McLane and MGB moved through Discovery and collaborated to dispose of 216 plaintiffs for very little recompense. The STIPULATED DISMISSAL of October 21, 2024 greatly benefited MGB, this Court, and Attorney McLane, but was a significant detriment to the plaintiffs whose rights and distinct identities of their cases were set aside for more than three (3) years.

The plaintiffs were originally told by Attorney McLane that his firm would take the case all the way through appeal if necessary. Then, as evidence mounted in favor of the plaintiffs, Attorney McLane began to recommend settling. Then he changed from recommending settlement to pressuring his clients for settlement. Attorney McLane finally delivered an ultimatum to his clients to take the settlement offer or be abandoned by counsel. The *Pro Se Plaintiffs* and three represented plaintiffs are those who would not be coerced into a settlement. Attorney McLane then placed liens on many of their cases, which repelled interest of other attorneys. After a stern warning about the liens, Attorney McLane relented and removed the liens. When other attorneys showed interest in the *Pro Se Plaintiffs'* case, they rejected the *Pro Se Plaintiffs* immediately after speaking to Attorney McLane.

MGB bears a large part of the responsibility for the issue of prior counsel through the practice of "splitting the agent from the principal." This is a negotiation technique used often in cases of agent representation in business. In jurisprudence, it should be considered highly unethical, though it is doubtful that attorneys understand this technique. When MGB put a quota

on the number of people to settle for the deal to be on the table, they split the fiduciary duty of the plaintiffs' attorney from the plaintiffs and solicited McLane's actions to be aligned with rational choice theory. Attorney McLane acted in his own self-interest rather than his clients' interest. MGB knew they were trying to maximize the pool of plaintiffs to be disposed of through settlement, though they may not know of the unethical nature of such offers. Attorney McLane likely had no idea what was happening to his allegiances as he openly stated to his clients how overwhelmed he was with this case. The only remedy now is to allow a SECOND AMENDED COMPLAINT.

This raises an issue of civil procedure seemingly not yet adjudicated at the appellate level. Fed. R. Civ. P. Rule 23(a)(4) states, "the representative parties will fairly and adequately protect the interests of the class." The present case was managed like a class action, though it was only a consolidation. The prerequisite of "adequacy" in Rule 23 exists for a reason. When more than 200 plaintiffs have a single, small-office attorney, there is no way for the distinct differences among plaintiffs to be fairly represented. This Court bears some responsibility for the inadequacy of representation of plaintiffs. In a true and righteous equitable decision, this will be taken into account.

Consolidation greatly benefited MGB, which disposed of 216 of the plaintiffs for a pittance leaving only eight (8) presently litigating. The Court also benefited in judicial economy of case management for well over 200 plaintiffs. Attorney McLane benefited greatly in unknown total compensation from GiveSendGo, client fees, and a contingency fee of a percentage of the settlement. However, for the distinct and individual cases of the *Pro Se Plaintiffs*, there was a three-year wait, lack of representation, counsel acting adverse to his own clients, counsel

abandonment, a protective order preventing them from receiving Discovery material, lack of communication from MGB, and expressions of annoyance toward *Pro Se Plaintiffs* by all involved. They never wanted to be *pro se*, but the system let them down.

The *Pro Se Plaintiffs* are working diligently to litigate this case and find representation.

## CONCLUSION

For the above reasons, summarized as judicial economy, fairness and equity, and First Amendment right to petition for redress, the *Pro Se Plaintiffs* respectfully request that this Court grant the Motion for Leave to amend the complaint as the SECOND AMENDED COMPLAINT.

**Attachment: proposed SECOND AMENDED COMPLAINT as Exhibit A, as required by Local Rule 15.1(b).**

Dated: March 18, 2025

Respectfully submitted,

/s/ *Tyler Adams*

TYLER ADAMS (*Pro se*)

/s/ *Roseann McNamara*

ROSEANN MCNAMARA (*Pro se*)

/s/ *Michelle Orfanos*

MICHELLE ORFANOS (*Pro se*)

/s/ *Sarah Shulman*

SARAH SHULMAN (*Pro se*)

/s/ *Jamie Steverman*

JAMIE STEVERMAN (*Pro se*)

## CERTIFICATE OF SERVICE

I hereby certify that this document was sent via e-mail attachment and via ECF to the counsel for Defendant Mass General Brigham, Inc.

/s/ *Tyler Adams*

TYLER ADAMS (*Pro se*)

/s/ *Roseann McNamara*

ROSEANN MCNAMARA (*Pro se*)

/s/ *Michelle Orfanos*

MICHELLE ORFANOS (*Pro se*)

/s/ *Sarah Shulman*

SARAH SHULMAN (*Pro se*)

/s/ *Jamie Steverman*

JAMIE STEVERMAN (*Pro se*)

Dated: March 18, 2025