**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| TYLER ADAMS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. |
| MASS GENERAL BRIGHAM | ) ) | 21-11686-FDS |
| INCORPORATED, | ) ) | |
| Defendant. | ) ) ) | |

**ORDER ON PLAINTIFFS' MOTION TO COMPEL**

**SAYLOR, J.**

This is a dispute arising from a mandatory COVID-19 vaccination policy at a major

hospital network.  Defendant Mass General Brigham Incorporated ("MGB") adopted a policy in

June 2021 that required all of its employees to be vaccinated against COVID-19, with provisions

for medical or religious exemptions under certain circumstances.  More than 2,400 employees

applied for exemptions; MGB granted 234.

The original complaint in this lawsuit asserted claims by more than 200 plaintiffs, all of

whom alleged that they were former employees who were unlawfully denied exemptions.  Only

three plaintiffs remain:  plaintiff Tyler Adams, who alleges disability discrimination in violation

of the Americans with Disability Act, 42 U.S.C. § 12101 *et seq.*; and plaintiffs Michelle Orfanos

and Jamie Steverman, who allege religious discrimination in violation of Title VII of the Civil

Rights Act, 42 U.S.C. § 2000e *et seq*.

Plaintiffs have moved for leave to take 15 additional depositions; to compel defendant to

produce certain documents that were originally produced to plaintiffs' prior counsel, Ryan

McLane; and for various other forms of relief.  For the reasons that follow, the motion will be granted in part and denied in part.

## I.      Background

On May 5, 2026, plaintiffs filed a motion to compel and for other relief under Fed. R. Civ. P. 37.  (Dkt. No. 413).  That motion was accompanied by an affidavit from plaintiffs' counsel as well as several supporting exhibits.  (Dkt. No. 415).  Defendant filed an opposition on May 18, 2026, also supported by several exhibits.  (Dkt. No. 421).  The Court heard argument on the motion on May 21, 2026.

## II.     Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

Fed R. Civ. P. 26(b)(2)(C).

III.    <u>Analysis</u>

There are two principal issues raised by plaintiffs' motion:  first, whether they should be permitted to take any additional depositions; and, second, whether defendant should be required to re-produce certain documents that were originally produced to plaintiffs' prior counsel.

A.    <u>Additional Depositions</u>

Plaintiffs seek an order granting them leave to take up to 15 additional depositions.  (Dkt. No. 414 at 3-6).  Defendant opposes the request on the grounds that plaintiffs failed to take additional depositions during the several years that the case has been in the second phase of discovery and that the requested 15 depositions are not proportional to the needs of the case. (Dkt. No. 421 at 8-11).

As a starting point, the Court notes that plaintiffs waited until the eve of the close of fact discovery to seek leave to take additional depositions.  The present motion was filed on May 15, 2026, and the final deadline for the close of fact discovery, set at a status conference held on March 26, 2026, was May 18.  (*See* Dkt. No. 389).  Even before that deadline was set at the status conference, there was nothing preventing plaintiffs from seeking to take additional depositions, after the stay in support of settlement discussions was lifted.

Furthermore, all discovery must be "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Courts have recognized that whether discovery is proportional to the needs of the case depends in part on the stage of the litigation.  *See Sierra v. Covidien LP*, 2025 WL 2463800, at *2 (D. Mass. Jan. 27, 2025) (citing cases).  In particular, courts are reluctant to order additional discovery in long-pending cases.  *See id.*

This case has now been pending for nearly four and a half years.  During the first phase of discovery, plaintiffs took nine depositions, which included a deposition of plaintiff Steverman's "communicator" (the person, according to defendant, who is most knowledgeable

3

about the rejection of her claim for a religious exemption).  (Dkt. No. 421 at 9).  Plaintiffs have apparently not yet deposed any of the members of plaintiff Adams's clinical panel (the panel of individuals who considered and rejected her claim for a disability exemption), nor plaintiff Orfanos's "communicator" (again, the person most knowledgeable about the rejection of her claim for a religious exemption).  (*Id.* at 6).  Those depositions were never taken despite the fact that the identities of those individuals have been known to plaintiffs since at least April 2022, when the information was provided to plaintiffs' prior counsel.  (Dkt. No. 421-13 at 2-3).

Given plaintiffs' long delay in seeking this additional discovery, the Court has little doubt that it would be justified in denying plaintiffs' request altogether.  Nonetheless, to facilitate the effective resolution of this case, and despite some serious misgivings, the Court will permit plaintiffs to take two additional depositions—one of a member of plaintiff Adams's clinical panel, to be selected by plaintiffs' counsel, and one of plaintiff Orfanos's "communicator."  The depositions shall not exceed five hours each, and the topic of each deposition shall be strictly limited to the circumstances of the denial of the relevant plaintiff's exemption request.  The depositions shall be taken within 30 days from the date this order enters—that is, by June 28, 2026.  No further depositions or extensions will be granted.

### B.    <u>Reproduction of Document Discovery</u>

Plaintiffs seek to compel defendant to re-produce document discovery that was originally produced to plaintiffs' prior counsel, Ryan McLane.  (Dkt. No. 414 at 18).  Defendant opposes that request, noting, among other things, that it already produced the discovery once, and that it would be burdensome to search through all previous productions and filter for only those documents that are relevant to the three remaining plaintiffs in the case.  (Dkt. No. 421 at 14-16).

During the first phase of the case, when plaintiffs were represented by attorney McLane, defendant produced more than 30,000 pages of documents to plaintiffs.  (Dkt. No. 421-3 ¶ 4).

4

On November 14, 2024, the Court granted attorney McLane's motion to withdraw as counsel as to the remaining plaintiffs.  (Dkt. No. 243).  Subsequently, plaintiffs proceeded *pro se* until present counsel began representing plaintiffs in May 2025.  (Dkt. No. 415, ¶ 115).

Present counsel for plaintiffs, Sujata Gibson, represents that she has attempted to obtain the previously produced discovery from attorney McLane, but that her efforts have been unsuccessful.  (Dkt. No. 415 ¶¶ 116, 119).  According to attorney Gibson, attorney McLane told another one of plaintiffs' counsel, Gregory Hession, that "he no longer has access to the discovery because it was on an e-discovery platform he no longer subscribes to."  (*Id.* ¶ 119).  In January 2026, defendant provided "just under 3,000 documents" to plaintiffs, although counsel contends that they were produced in a different format from the original production provided to attorney McLane.  (*Id.* ¶¶ 125, 127-28).

There is no dispute that defendant fully complied with its discovery requirements when it provided the documents to attorney McLane.  It is axiomatic that "parties are bound by the acts of their attorneys."  *Ojedo-Toro v. Rivera-Mendez*, 853 F.2d 25, 30 (1st Cir. 1988).  When defendant produced the relevant documents to attorney McLane, it produced them to plaintiffs.  Plaintiffs appear to have lost the documents through no fault of defendant.

To the extent that attorney McLane has not provided, or is unable to provide, the documents to present counsel, plaintiffs' dispute is with him, not defendant.  Attorneys have ethical obligations to preserve such records:  the relevant rule governing maintenance of client files provides that "the client's file consists of," among other things, "all . . . discovery documents," and the comment to that rule explicitly notes that the client file includes "documents produced or received in discovery."  Mass. R. Pro. Conduct 1.15A(a)(4), *id.* 1.15A cmt. 2.  That same rule provides that "a lawyer shall take reasonable measures to retain a client's

5

file in a matter until," as relevant to discovery documents, "six years have elapsed after the completion of the matter or the termination of the representation in the matter." *Id.* 1.15A(c)(1). The rule further requires that "[a] lawyer shall not destroy a client's file if the lawyer knows or reasonably should know that . . . a lawsuit or other legal claim related to the client matter is pending." *Id.* 1.15A(e)(1).

Plaintiffs' assertions, if true, raise substantial questions as to whether attorney McLane has complied with his ethical obligations and potentially whether he committed legal malpractice. But plaintiffs have not submitted an affidavit from attorney McLane attesting to the truth of his reported assertions. And there is no record evidence that anyone even attempted to contact the actual provider of the e-discovery platform used by attorney McLane to see whether the documents can be recovered.

In any event, if attorney McLane does not have the documents and did not take appropriate steps to preserve them, as a practical matter, current counsel may have no alternative means of obtaining the records other than defendant re-producing them. Defendant, however, should not be forced to bear any costs associated with plaintiffs' self-spoliation.

Accordingly, before this Court will order any relief, plaintiffs must first submit evidence sufficient to demonstrate that relief is warranted. At a minimum, that evidence should include an affidavit from attorney McLane stating that he failed to preserve the documents originally produced to plaintiffs, and an affidavit from one or more persons attesting that reasonable efforts have been made to try to recover the documents from the actual e-discovery platform provider, without success. Any such evidence must be filed by June 14, 2026.

If that evidence proves to the Court's satisfaction that there is no reasonable alternative, it will order that the relevant documents be re-produced to plaintiffs, at plaintiffs' expense—that is,

plaintiffs shall bear both the actual costs of re-producing the documents and the reasonable fees for any attorney or professional time expended in sorting, reviewing, and producing the documents.  The Court will not, however, require defendant to re-produce documents that plaintiffs themselves originally produced to defendant.  Furthermore, any further document production by defendant will be subject to the protective order issued by the Court.

### C.    **Remaining Issues**

Plaintiffs raise several other issues in their motion that may be addressed summarily.

First, plaintiffs seek to extend the fact discovery deadline by 60 days.  The Court will extend the deadline to the extent described above, but not otherwise.

Second, plaintiffs seek to compel defendant to produce "all records related to [p]laintiffs' accommodation determinations."  Defendant, however, has represented that all such documents were either produced to attorney McLane or do not exist.  (Dkt. No. 421 at 11-14).  In the absence of contrary evidence, the Court will not compel the production of such documents except as described above.

Third, plaintiffs seek an order that "[d]efendant may not move for summary judgment" until plaintiffs have taken additional discovery.  The Court will not enter such an order.  If plaintiffs believe they are unable to properly oppose summary judgment with the information they possess, the proper procedure is provided by Rule 56(d).

Fourth, plaintiffs seek to "compel[] identification" of the individuals who reviewed plaintiffs' accommodation requests.  Defendant has demonstrated, without contradiction, that this information was made available to plaintiffs some years ago.  Except to the extent that the identity of the individuals is set out in any documents that are re-produced to plaintiffs pursuant to this order, the Court declines to order further redisclosures.

Fifth, plaintiff Orfanos has decided to pursue her claim related to her 2024 termination in state court. To the extent she seeks discovery related to that action in this case, it is improper, and will be denied.

## IV.     <u>Conclusion</u>

For the foregoing reasons, plaintiffs' motion is GRANTED in part and DENIED in part.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  May 29, 2026                                  United States District Judge