**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TYLER ADAMS, MICHELLE ORFANOS, AND JAMIE STEVERMAN, <br><br> Plaintiffs, <br><br> v. <br><br> MASS GENERAL BRIGHAM INCORPORATED, <br><br> Defendant. | Civil Action No.   1:21-cv-11686-FDS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT ON THE CLAIM OF PLAINTIFF ADAMS**

325094993v.12

Defendant Mass General Brigham Incorporated ("MGB") files this Memorandum of Law in support of its Motion for Summary Judgment on Plaintiff Tyler Adams' sole count for failure to accommodate an alleged disability under the Americans with Disabilities Act ("ADA").

## INTRODUCTION

MGB is one of the world's premier health care systems, serving 1.5 million patients a year, including those with some of the most medically complicated conditions in the world. In 2021, to protect its vulnerable patient population, staff, visitors, and the public from COVID-19 ("COVID") infection amid a global pandemic, MGB relied on public health guidance, scientific data, and its world-renowned experts' clinical judgment to implement a policy requiring all staff to be vaccinated against COVID absent an approved medical or religious exemption (the "Vaccination Policy"). Against this backdrop and with MGB's unwavering commitment to patient care at the forefront, MGB constructed a fair, rigorous, legally compliant process for reviewing exemption requests and worked around the clock to review individually thousands of requests. In accordance with the Vaccination Policy, MGB terminated those employees whose exemption requests did not meet MGB's criteria and who refused vaccination. It did so to protect human lives and ensure continued delivery of state-of-the-art care to its patients.

This case arises out of MGB's enforcement of its Vaccination Policy with respect to Plaintiff, who was one of approximately 2,400 MGB employees who applied for medical and/or religious exemptions from the Vaccination Policy when it was rolled out in 2021. Plaintiff requested only a medical exemption. After a careful review process, her medical exemption request was denied because it failed to demonstrate a contraindication to the COVID vaccine or any other sufficient medical reason necessitating an exemption. Plaintiff was informed that her request was denied, and that she had to comply with the Vaccination Policy or face termination. She refused to get vaccinated, and MGB terminated her employment in November 2021 for her failure to comply with the Vaccination Policy.

Plaintiff asserts a single claim for failure to accommodate under the ADA, alleging at most that she was entitled to a medical exemption from the Vaccination Policy on the basis of: (1) an allergy to

325094993v.12

polyethylene glycol ("PEG"), an ingredient in the Moderna and Pfizer mRNA COVID vaccines, (2) an allergy to polysorbate 80 ("PS80"), an ingredient in the Janssen COVID non-mRNA vaccine ("J&J"), and (3) thrombophilia.[1] However, it is undisputed that:

- Plaintiff's medical exemption request did not state that she had a diagnosed allergy to either PEG or PS80, let alone indicated a contraindication to COVID-19 vaccination under the Vaccination Policy and CDC guidance.

- Plaintiff's "dermatologist" who allegedly diagnosed Plaintiff with allergies refused to sign Plaintiff's medical exemption request because she was "not an expert in this area."

- With respect to her alleged allergies, Plaintiff did not provide MGB with medical documentation from an appropriate treating provider with relevant expertise.

- After MGB informed Plaintiff that her exemption request was denied, MGB recommended that she consult an allergist to address her concerns and evaluate whether a non-mRNA vaccine should be considered. MGB also offered Plaintiff the option of having a consultation with one of its allergy departments, and informed her that she could resubmit the exemption form after consulting an allergy specialist.

- Plaintiff did not consult an allergist, or submit any additional information.

On this undisputed record, Plaintiff's failure to accommodate claim fails as a matter of law for multiple independent reasons. First, Plaintiff cannot establish, as she must for the third prong of the *prima facie* case, that her requested accommodation—exemption from the Vaccination Policy—was reasonable, because she did not submit medical documentation demonstrating that she suffered from a medical condition that was a contraindication under Centers for Disease Control and Prevention ("CDC") guidance to *any*, much less *all*, COVID vaccines. Specifically, Plaintiff's scant medical documentation did not demonstrate a contraindication to vaccination because (a) the documentation failed to put MGB on notice of any specific alleged allergies, as it made no mention of PEG or PS80 and did not state that she had a diagnosed allergy to either; (b) allergies to PEG and PS80 were not contraindications to *any* vaccines under the Vaccination Policy and CDC guidance unless they were severe or immediate—which

---

[1] Plaintiff has been unclear regarding what she is claiming to be her alleged disability/ies. Given that lack of clarity, MGB addresses Plaintiff's alleged PEG and PS80 allergies and thrombophilia and leaves her to her proof that any of these alleged conditions is a disability under the ADA.

325094993v.12

nothing in her documentation indicated; (c) thrombophilia was not a contraindication to *any* COVID vaccine; and (d) even if Plaintiff's medical documentation were sufficient to establish that she had a diagnosed severe or immediate PEG allergy (it was not), nothing she submitted even arguably indicated a severe or immediate allergy to PS80, and thus her submissions did not demonstrate a contraindication to the J&J non-mRNA vaccine, which did not contain PEG and which Plaintiff was offered—this was a reasonable accommodation as a matter of law. Second, her claim further fails on the third prong of the *prima facie* case because (a) she failed to provide medical documentation from an *appropriate* treating provider with *relevant expertise* to substantiate any need for exemption ; and (b) she was responsible for the breakdown in the interactive process by refusing to see an allergist.

MGB requests that this Court grant this motion and dismiss Plaintiff's claim with prejudice.

## FACTUAL BACKGROUND

### I.    The COVID-19 Pandemic and MGB's Decision to Implement the Vaccination Policy

More than 1,000,000 Americans died from COVID. Phase I Statement of Undisputed Facts ("SOUF I") ¶13, Dkt. 150; Plaintiff's Concise Statement of Material Facts from Phase I Summary Judgment ("PSMF I"), ¶13 (Undisputed) Dkt. 154.[2] During the pandemic, MGB's patients included medically vulnerable people at higher risk for serious disease and death from COVID. SOUF I ¶17; PSMF I ¶17. COVID placed an immense burden on MGB as a healthcare system, and its patients and employees. SOUF I ¶53; PSMF I ¶53. MGB's pandemic experience was that, despite infection control measures, COVID transmission in hospitals continued, and more measures were needed to protect patients and staff. SOUF I ¶¶19, 21-23, 53; PSMF I ¶¶19, 21-23, 53. In 2021, MGB's senior leadership, including world renowned experts in infectious disease and infection control, determined that a vaccination requirement for its workforce was necessary, given the unique public health emergency, and related operational challenges. SOUF I ¶¶45-50; PSMF I ¶¶45-50 .[3] Employees seeking an exemption to

---

[2] These documents are hyperlinked to the docket; MGB will provide a copy with its courtesy copy to the Court.

[3] As the First Circuit noted about an employer's COVID vaccine policy: "At the time that it enacted the Policy, the [employer] undoubtably had legitimate interests in preventing the spread of COVID-19 and in protecting the health and safety of its employees, customers, and vendors." *Brox v. Woods Hole*, 164 F.4th 37, 50 (1st Cir. 2026).

3

the Vaccination Policy were required to submit their request by September 3, 2021. SOUF I ¶127; PSMF I ¶127. Employees without an approved exemption were required to be fully vaccinated by October 15, 2021. SOUF I ¶125; PSMF I ¶125.

## II.     The Medical Exemption Review Process

Each request was reviewed by the Occupational Health Clinical Panel ("OHCP"), which was comprised of leaders of MGB's major Occupational Health clinics—all of whom had substantial clinical and administrative knowledge concerning vaccine delivery. MGB's Phase II Statement of Undisputed Facts as to Plaintiff Tyler Adams. ("SOUF II") ¶¶1-14. Employees seeking a medical exemption were required to submit a request form, signed by a treating provider, that identified the medical condition for which the employee sought an exemption. SOUF II ¶¶3-5. Each request was given an individual, thoughtful, case-by-case review. SOUF II ¶¶13-14. The panel assessed all of the medical documentation provided by the employee to determine if the employee had documented a contraindication to receiving the COVID vaccine under the CDC's guidance. SOUF II ¶¶13-14. Where needed, MGB would ask for more information from a specialist, such as—in the case of a claimed allergy to a vaccine or a vaccine component—an allergist, to ascertain whether a CDC contraindication existed. SOUF II ¶¶33-34.

Those employees who did not demonstrate the need for a medical exemption were not approved. SOUF II ¶¶42-44. Each employee whose exemption request was denied was informed that the request would be reassessed if additional medical documentation was submitted for consideration. SOUF II ¶¶45, 46. Those employees who were not approved for a medical exemption and refused vaccination by the deadline were ultimately terminated. SOUF II ¶47.

## III.    Contraindications Under the CDC Guidance Were Limited

The Vaccination Policy was based on CDC guidance. SOUF II ¶¶15-21. The CDC guidance in effect at the time Plaintiff submitted her medical exemption request recognized only limited contraindications to vaccination. SOUF II ¶16. As pertinent here, these included a history of "*[s]evere allergic reaction (e.g., anaphylaxis) … to a component of the COVID-19 vaccine*" or "*[i]mmediate*

4

allergic reaction of any severity to a … known *(diagnosed)* allergy to a component of the vaccine." SOUF II ¶22. A "severe allergic reaction" is one at the level of anaphylaxis or otherwise life-threatening, such as difficulty breathing. SOUF II ¶¶23-24. "[A]n immediate allergic reaction to a vaccine or medication is defined as any hypersensitivity-related signs or symptoms … that occur *within four hours* following administration." SOUF II ¶25. Different brands and types of COVID vaccines had different ingredients, and a contraindication based on a severe or immediate allergy to a component in one type of vaccine did not preclude vaccination with the others. SOUF II ¶¶26-29. Any of the available COVID-19 vaccines satisfied the Policy. SOUF II ¶30. The guidance also addressed thrombophilia and stated that individuals with thrombophilia were not contraindicated from receiving any of the then-authorized vaccines and could receive any of them, including the J&J vaccine. SOUF II ¶¶31-32.

## IV.     Plaintiff's 2020 Mask Accommodation

In June 2020, after MGB implemented a mask policy, Plaintiff submitted a letter from a nurse practitioner ("NP") in the office of her PCP, claiming Plaintiff had an allergic reaction to surgical masks. SOUF II ¶¶48-49. Plaintiff's PCP, Dr. Navarra, who specializes in Internal Medicine, Geriatrics, and Obesity Medicine and is not an allergist, advised Plaintiff to undergo allergy testing. SOUF II ¶¶50-51. On August 14, 2020, after having allergy patch testing done,[4] Plaintiff submitted a letter from her dermatologist's office listing the positive allergens from Plaintiff's test results, including a contact allergy to quaternium-15, and certain mask use restrictions. SOUF II ¶¶52-54. The information that Plaintiff submitted in support of her request for a mask accommodation did not include any references to PEG or PS80 allergies, and nothing in that request suggested that she was contraindicated for the COVID vaccine. SOUF II ¶¶54-55. In November 2020, MGB transferred her to a remote position as a medical accommodation for her alleged contact allergy to masks. SOUF II ¶¶56-59.

## V.     Plaintiff's Pre-2021 Vaccinations

---

[4] The provider whom Plaintiff refers to as her "dermatologist," Kimberly Comeau, PA-C, is actually a physician's assistant practicing in a dermatology office. SOUF II ¶52. In keeping with Plaintiff's characterization, when referencing Plaintiff's "dermatologist," MGB is referring to PA Comeau.

325094993v.12

Before requesting an exemption from the COVID vaccine in 2021, Plaintiff had never requested a medical exemption from any vaccine. SOUF II ¶¶60, 64. Between 2017 and 2020, Plaintiff received multiple vaccines—including four influenza vaccines and one Tdap vaccine—without consulting her doctor about whether any contained components to which she claims she is allergic. SOUF II ¶¶61-62. Aside from alleged localized swelling with the influenza vaccine, which she managed with allergy medication, Plaintiff experienced no adverse reactions to these vaccines. SOUF II ¶63.

## VI.    Plaintiff's Vaccine Medical Exemption Request and Related Communications

Plaintiff alleges that after MGB announced its Vaccination Policy, she asked her dermatologist whether she was medically exempt due to alleged allergies. SOUF II ¶¶65-69. That provider responded that "she was unable to write a letter of exemption as she was not 'an expert in this area' and did not have [Plaintiff's] complete medical history." SOUF II ¶70.

On August 23, 2021, after her dermatologist declined to support her exemption request, Plaintiff submitted a medical exemption request form completed by an NP from her PCP's office. SOUF II ¶¶71-77. The NP did not check the box for "History of severe or immediate allergic (anaphylactic) reaction to a previous dose or component of a COVID-19 vaccine" or identify any vaccine component to which Plaintiff was allergic. SOUF II ¶77. Instead, the NP checked the box indicating Plaintiff was seeking an exemption for "other medical reasons" and provided as the sole basis for the exemption request this single phrase: "patient reports burning of hands and feet when taking MiraLAX." SOUF II ¶78. The information on the form did not show that Plaintiff had an allergic reaction to MiraLAX or that her provider determined that she had such a reaction, it was simply a statement of what Plaintiff reported to her provider. SOUF II ¶¶76-78. The form did not even mention PEG[5] or PS80, much less state that Plaintiff had a diagnosed allergy to either of those substances. SOUF II ¶83. The form said nothing about anaphylaxis or any severe reaction, said nothing about the timing of the onset of Plaintiff's reported reaction to taking MiraLAX, and did not indicate that any alleged reaction occurred within 4 hours of

---

[5] MiraLAX is not a component of any of the COVID vaccines.  It is the brand name of a laxative that contains PEG, but MiraLAX and PEG are not one and the same. SOUF II ¶82.

taking MiraLAX. SOUF II ¶¶78-81. In short, there was nothing in Plaintiff's exemption request form that indicated a contraindication to any COVID vaccine as there was no documentation of a severe or immediate diagnosed allergy to a vaccine component. SOUF II ¶89.

On August 30, 2021, after reviewing Plaintiff's request, the OHCP denied the request, explaining that the medical information provided did not demonstrate a sufficient medical reason or contraindication to support an exemption and informed Plaintiff that she could submit additional information for consideration. SOUF II ¶¶86-92.

On September 2, 2021, Plaintiff sent the OHCP a four-line letter from her PCP in support of her exemption request. SOUF II ¶¶93-95. The letter stated: "Patient is exempt from getting the COVID vaccine due to history of multiple allergies: MiraLAX, Cipro, Dupixin [sic], Formaldehyde, Neomycin, Bromol and a history of Thrombophilia." SOUF II ¶95. The letter did not describe the nature, severity, or timing of any of Plaintiff's alleged reactions, said nothing about anaphylaxis, did not mention PEG or PS80, or state that Plaintiff had a diagnosed allergy to either of those substances. SOUF II ¶¶96-99. As such, nothing in the letter indicated that Plaintiff had a diagnosed allergy to PEG or PS80 much less a severe or immediate allergic reaction to either substance. SOUF II ¶101. Thus, the letter from Dr. Navarra did not meet the criteria for demonstrating a contraindication to COVID vaccination. *Id.* Moreover, neither the initial request nor the letter: identified which vaccines Plaintiff was allegedly unable to receive; explained how her alleged conditions would prevent her from safely receiving a COVID vaccination; or contained information regarding possible options for Plaintiff to receive a vaccine with precautions, such as providing a partial dose or longer observation period. SOUF II ¶¶100-101.

On September 16, 2021, the OHCP denied Plaintiff's request again and recommended that she consult an allergist "to evaluate whether a non-mRNA vaccine should be considered as a possible option," offered to facilitate a referral to the MGH or BWH allergy departments, and informed her that she could resubmit her exemption form after consulting an allergy specialist. SOUF II ¶¶102-08. When, as here, there was a concern about an allergy to a vaccine ingredient, MGB had determined it was

7

important to have an allergist involved, as they had the appropriate expertise to determine not only if there was an actual contraindication, but also what options might be available to safely administer a vaccine, including—in the case of severe or immediate allergy to PEG—whether a non-mRNA vaccine was an option. SOUF II ¶¶36-41. Despite MGB's recommendation, Plaintiff did not consult an allergist and did not ask her PCP for, or ever submit, additional documentation in support of her request. SOUF II ¶¶109-24.

## VII.    Plaintiff Is Terminated for Non-Compliance with the Vaccination Policy

Plaintiff did not get vaccinated by the October 15th deadline. SOUF II ¶125. On October 20, 2021, MGB informed Plaintiff that she was being placed on unpaid administrative leave effective October 21, 2021, and that her employment would be terminated if she did not comply by November 5, 2021. SOUF II ¶126. Plaintiff did not comply by the deadline, and was terminated November 10, 2021 for non-compliance with the Vaccination Policy. SOUF II ¶127-28.

## VIII.   Plaintiff Admits that She Does Not Have an Anaphylactic Reaction to MiraLAX and that She Never Informed MGB that She Had an Anaphylactic Reaction to Any Medication

In this litigation, Plaintiff now claims that she has allergies to medications, including an anaphylactic allergy to Cipro, and that all of those medications to which she is allergic include PEG or PS80 in their ingredients. SOUF II ¶¶134-37. Plaintiff admits, however, that the documentation that she submitted to MGB did not include any reference to her having an anaphylactic reaction to any of these medications and that she has never experienced an anaphylactic reaction to MiraLAX. SOUF II ¶141.

## ARGUMENT

## I.    Plaintiff Cannot Establish a *Prima Facie* Case for ADA Failure to Accommodate as a Matter of Law

To establish a *prima facie* case for failure to reasonably accommodate, "a plaintiff must produce sufficient evidence for a reasonable jury to find that (1) [s]he was disabled within the meaning of the

8

ADA,[6] (2) [s]he was a qualified individual, and (3) the [employer], despite *knowing* of the plaintiff's disability, did not *reasonably* accommodate it." *Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 428-29 (D. Mass. 2021) (emphasis added) (quoting *Flaherty v. Entergy Nuclear Operations, Inc.*, 946 F.3d 41, 55 (1st Cir. 2019)). Plaintiff cannot establish the third prong unless she can show that (1) MGB knew about an alleged disability, and (2) her requested accommodation was reasonable. *See Together Emps.*, 573 F. Supp. 3d at 433 ("plaintiffs … must … show that the employer was aware of their disabilities" and "[t]he  requested accommodation must be reasonable on its face"). Additionally, Plaintiff cannot establish the third prong if "she was the one responsible for the breakdown in the interactive process" of determining whether an accommodation can be provided. *Ortiz-Martinez v. Fresenius Health Partners, PR, LLC*, 853 F.3d 599, 605 (1st Cir. 2017) (affirming summary judgment on ADA claim and lower court's holding that plaintiff failed to establish the third prong where she was responsible for the breakdown).

Plaintiff cannot establish the third prong of her *prima facie* case as a matter of law for at least two independent legal reasons. First, as a matter of law, Plaintiff cannot establish that her requested accommodation—exemption from the Vaccination Policy—was reasonable, because it is undisputed that she did not submit medical documentation demonstrating that she suffered from a medical condition that was a CDC contraindication to *any*, much less *all*, COVID vaccines. Second, Plaintiff's claim further

---

[6] Plaintiff has not clearly identified any alleged disability. The Operative Complaint alleges that she "was denied a disability accommodation after submitting request and documentation to [MGB] detailing her disability condition for which [MGB] had already granted her a reasonable accommodation to [its] mask policy." Dkt. No. 61. While Plaintiff sought and received a previous medical accommodation from MGB's mask policy, it was based on a *contact* allergy to quaternium-15 and its formaldehyde-releasing counterparts, and did not involve PEG or PS80 allergies or thrombophilia. SOUF II ¶54. By contrast, in her verified response to MGB's Phase I Plaintiff Questionnaire, the medical conditions for which she claims to have sought an exemption from COVID vaccination include "Allergy," which she described as allergies to medications containing PEG and/or PS80, and "Thrombophilia." SOUF II ¶¶129-33. Subsequently, in her April 16, 2026, Declaration, she alleged that she sought an exemption due to an alleged severe allergy to PEG, which is found in MiraLAX. SOUF II ¶140. For purposes of this motion only, MGB assumes that Plaintiff could establish some disability. MGB reserves the right to assert additional challenges and defenses if any portion of this case proceeds to trial, including but not limited to (i) Plaintiff's alleged conditions are not disabilities under the ADA (ii) she posed a direct threat, and (3) granting her an exemption from the Vaccination Policy would have been an undue hardship.

9

fails on the third prong because on the undisputed facts she was responsible for the breakdown in the interactive process by refusing to see an allergist or submit any further documentation.

### A.   Plaintiff Cannot Establish That Exemption from the Vaccination Policy Was a Reasonable Accommodation as a Matter of Law

Plaintiff cannot meet her burden of showing that her request for an exemption from the Vaccination Policy was a reasonable accommodation. *See US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002) (Plaintiff must show requested accommodation is "reasonable on its face"). The ADA requires only that an employer "provide a *reasonable* accommodation for [an employee's] disability." *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 258 (1st Cir. 2001) (emphasis added). To be reasonable, a requested accommodation must be "linked to plaintiff's disability." *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012); *see also Hustvet v. Allina Health Sys.*, 910 F.3d 399, 410 (8th Cir. 2018) ("in order for the accommodation to be reasonable, the request must relate to the individual's disability"). Put simply, "a proposed accommodation cannot be said to be 'reasonable' if it is not also 'necessary.'" *Fults v. Nissan N. Am. Inc.*, 4:18-CV-73-TAV-CHS, 2020 WL 12862964, at \*3 (E.D. Tenn. Sept. 16, 2020) (*citing Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812 (6th Cir. 2020)); *see also Criado v. IBM Corp.*, 145 F.3d 437, 444 (1st Cir. 1998) (purpose of interactive process is to determine "what accommodation is necessary" for the requesting employee) (citation omitted). The onus is on the requesting employee to submit documentation showing that the employee's disability necessitates the requested accommodation. *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007).

### 1.   This Court Has Held That to Show Exemption Was *Reasonable*, the Plaintiff Must Establish a Condition for Which  Vaccination Was Contraindicated

This Court has already properly held in this case, at the preliminary injunction stage, that in the vaccine context, to demonstrate that a requested exemption was a reasonable accommodation, an employee must establish that she suffered from a medical condition for which vaccination was contraindicated under CDC guidance. *Together Emps.*, 573 F. Supp. 3d at 434; *see also e.g. Hustvet*, 910 F.3d at 411. "[W]here the claimed disability is not a contraindication [under the CDC guidance] for the

vaccine, the requested accommodation [of an exemption] does not sufficiently relate to the claimed disability" and is not reasonable. *Together Emps.*, 573 F. Supp. 3d at 434 (citing *Hustvet*, 910 F.3d at 411). Two other district court judges have held the same under the same MGB Vaccination Policy. *McCarthy v. Mas. Gen. Brigham Inc.*, No. 24-CV-10184-DJC, 2024 WL 3416025, at *4 (D. Mass. July 15, 2024) (*quoting Together Emps.*, 573 F. Supp. 3d at 434); *Risser v. Mass Gen. Brigham Inc.*, No. 1:24-cv-13230-WGY (D. Mass. Mar. 24, 2026), Dkt. No. 83 (summary judgment for MGB in medical vaccine case under ADA on grounds including that, based on information submitted to MGB at the time, there was insufficient evidence for factfinder to conclude plaintiff's alleged allergy to vaccine was severe under CDC guidance). *See also, e.g.*, *Klimek v. Centracare Health Sys.*, No. 22-CV-3231 (LMP/LIB), 2025 WL 904442, at *10 (D. Minn. Mar. 25, 2025) ("in vaccine exemption cases under the ADA, courts routinely look to CDC guidance to determine whether the CDC recognizes the alleged disability as a contraindication with the vaccine at issue to discern whether a requested exemption … is reasonable").

### 2. First Circuit Precedent Is Clear: MGB Was Entitled to Rely on CDC Guidance

First Circuit precedent makes clear that MGB was entitled to follow the CDC guidance regarding medical contraindications to vaccination in evaluating exemption requests. The First Circuit has repeatedly held that employers that relied on the CDC's public health guidance during the pandemic acted reasonably as a matter of law. *See Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 91 (1st Cir. 2025) (holding employer acted reasonably where it "relied on the objective, scientific information available to [it], with particular attention to the views of public health authorities"); *Melino v. Bos. Med. Ctr.*, 127 F.4th 391, 397-98 (1st Cir. 2025) ("it is uncontroverted that [the hospital] implemented its vaccine requirement based on the CDC's recommendations"); *see also Geronimo v. Melrose-Wakefield Healthcare Corp.*, No. 1:23-CV-11138-JEK, 2025 WL 2050286, at *4-5 (D. Mass. July 22, 2025) (holding that a hospital acted reasonably as a matter of law where it enacted its COVID policy based on its experiences and the CDC's recommendations).

It follows that employers—including MGB—acted reasonably as a matter of law when they

11

denied exemption requests where the reported medical reason for exemption was not a contraindication to vaccination under the then-applicable CDC guidance. For example, in *Hustvet*, the court held that the plaintiff's request to forgo rubella immunization was not "sufficiently relate[d] to her purported disability" of a seizure disorder because the CDC did not consider seizures a contraindication for the vaccine. 910 F.3d at 411. Similarly, in *McCarthy*, an ADA case arising under MGB's Booster Policy, the court concluded that the plaintiff failed to allege a sufficient connection between her alleged impairment—an alleged prior reaction to one of the mRNA COVID vaccines in the form of numbness and tingling of the face and mouth with no alleged underlying medical condition—and the requested exemption from MGB's Booster Policy. 2024 WL 3416025, at *4. The *McCarthy* court held that this conclusion was buttressed by the fact that the policy "allowed for the receipt of … a non-mRNA vaccine as a booster." *Id.*

### 3.     Plaintiff's Two Terse Submissions Did Not Demonstrate a CDC Contraindication to Vaccination

Nothing in the four corners of Plaintiff's scant medical documentation demonstrated a contraindication under CDC guidance to *any*, much less *all*, COVID vaccinations. Plaintiff's two terse submissions—which stated only: (1) that "patient reports burning of hands and feet when taking MiraLAX;" and (2) that "Patient is exempt from getting the COVID vaccine due to history of multiple allergies: MiraLAX, Cipro, Dupixin [sic], Formaldehyde, Neomycin, Bromol and a history of Thrombophilia"—failed to identify the existence of any diagnosed allergy to a component of an COVID vaccines or adequately explain the need for exemption from COVID vaccination based on CDC contraindications to any of her alleged conditions. *See* U.S. Equal Employment Opportunity Commission ("EEOC"), Enforcement Guidance: Disability-Related Inquiries and Medical Examinations Under the ADA (July 26, 2000) ("Documentation is insufficient if it does not specify the existence of an ADA disability and explain the need for reasonable accommodation."); *Freadman*, 484 F.3d at 102 (employee's request for accommodation "must be sufficiently direct and specific and … must explain how the accommodation requested is linked to some disability").

a.      **Plaintiff's Medical Documentation Did Not Notify MGB of a Diagnosed Allergy to Any Specific Component of Any COVID-19 Vaccine**

An essential element of a failure to accommodate claim is the employer's knowledge of the plaintiff's disability. *Jones*, 696 F.3d at 89 ("Where a plaintiff alleges a failure to accommodate, the plaintiff must show that the employer knew about plaintiff's disability…."); *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014) (plaintiff "must produce sufficient evidence that … [her employer] had notice of her disability"). An employer "cannot be faulted for failing to accommodate a disability of which it was not aware." *Hustvet*, 910 F.3d at 411.

Here, Plaintiff failed to adequately inform MGB that she had a diagnosed allergy to PEG (a component in the Moderna and Pfizer mRNA vaccines) or PS80 (a component in the J&J non-mRNA vaccine), which she claims required her to avoid COVID vaccination. First, it is undisputed that neither the initial exemption request nor the letter that Plaintiff submitted from her PCP made *any mention* of PEG or PS80, much less that she had a diagnosed allergy to either of those substances. SOUF II ¶¶83, 99. Likewise, with respect to Plaintiff's former accommodation for an alleged contact allergy to masks, she has not shown—and cannot show—that any information she submitted in support of that request included any reference to diagnosed PEG or PS80 allergies, or in any way suggested that she was contraindicated for the COVID vaccine. SOUF II ¶¶54-55. On this undisputed record, with respect to her claimed PEG and PS80 allergies, Plaintiff cannot meet her burden of showing that MGB was aware of those alleged allergies at the time she requested a medical exemption from the COVID vaccine, and her claim as it pertains to those alleged allergies therefore fails as a matter of law. *See Jones*, 696 F.3d at 89 (affirming summary judgment where employer was "not on notice that the symptoms [plaintiff] described in h[er] email were caused by a disability" because the email did "not mention BPP [his claimed disability, brachial plexus palsy] or suggest in any way that [his] recent medical treatments or pain therapy were connected to BPP"); *Reed*, 244 F.3d at 260-62 (affirming summary judgment where plaintiff failed to adequately put her employer on notice of her disability because she did not inform her employer that her bipolar disorder was the cause of her anger problems).

13

### b. Plaintiff's Submissions Identified No Severe or Immediate Allergic Reaction

Even if Plaintiff could show she put MGB on notice that she had diagnosed allergies to PEG and PS80 (she cannot), she cannot show that any allergy was *severe* or *immediate* (occurring within four hours) as required for a contraindication under the Vaccination Policy and CDC guidance. SOUF II ¶¶87-89. It is undisputed that, within the four corners of the only two documents that Plaintiff submitted to MGB, there was *no* indication that she had experienced any such reaction to PEG or PS80—or any medications containing either of those ingredients.

First, it is undisputed that on Plaintiff's initial exemption request, her NP did not check the box for "History of severe or immediate allergic (anaphylactic) reaction to a … component of a COVID-19 vaccine." SOUF II ¶77. Instead, the NP checked the box for "other medical reasons" and stated only: "patient reports burning of hands and feet when taking MiraLAX." SOUF II ¶78. This description of Plaintiff's self-report about an alleged reaction to MiraLAX does not indicate that the reaction was severe (i.e. anaphylactic or life-threatening). SOUF II ¶¶81, 87. Moreover, Plaintiff admitted at deposition she never experienced an anaphylactic reaction to MiraLAX. SOUF II ¶141. The submission also does not indicate that the alleged reaction to MiraLAX was immediate (occurring within four hours). SOUF II ¶79. Likewise, the PCP letter included only a general list of medication allergies *without any description* of the nature, severity, or timing of those alleged reactions. SOUF II ¶¶95-98. Neither submission referenced anaphylactic or other life-threatening reactions, identified which vaccines Plaintiff was allegedly unable to receive, explained how her alleged conditions would prevent her from safely receiving a COVID vaccination, or contained information regarding possible options for Plaintiff to receive a vaccine with precautions, such as providing a partial dose or longer observation period. SOUF II ¶¶84, 100-101.

On these undisputed facts, the OHCP acted reasonably as a matter of law in concluding, based on the four corners of the only two documents Plaintiff submitted to MGB, that nothing in her submissions indicated a CDC contraindication to vaccination. *See* Affidavit of Michael Steinberg

14

("Steinberg Aff.")  ¶28, Exhibit 27, Excerpt of the Transcript of the Hearing on MGB's Motion for Summary Judgment (*Risser*, No. 1:24-cv-13230-WGY, Dkt. Nos. 83, 85 (summary judgment for MGB, holding "there was insufficient evidence for a fact finder to find that the allergic reaction which [plaintiff] suffered was severe under the CDC guidelines" based on the description of an "Eczematous reaction of the lower legs and ankles onset three days after receiving the J&J COVID vaccine")); Steinberg Aff. ¶29, Exhibit 28, Excerpt of MGB's Memorandum of Law in Support of its Motion for Summary Judgment. Plaintiff's requested accommodation for alleged allergies was unreasonable as a matter of law.

### c.    Thrombophilia Was Not a Contraindication to *Any* of the Available COVID Vaccines

The only reference to Plaintiff's alleged thrombophilia was in the letter from her PCP, which stated only: "Patient is exempt from getting the COVID vaccine due to … a history of Thrombophilia." SOUF II¶95. As an initial matter, the letter provided no explanation as to why Plaintiff could not receive a COVID vaccine because of her alleged thrombophilia or which type of COVID vaccine was to be avoided. SOUF II¶¶95,100. Moreover, under the applicable CDC guidance, thrombophilia was *not* a contraindication to receiving *any* of the then-authorized vaccines, including the J&J vaccine. SOUF II ¶¶31-32. Accordingly, Plaintiff's requested accommodation of exemption from the Vaccine Policy based on her alleged thrombophilia was unreasonable as a matter of law.

The fact that the four corners of Plaintiff's two submissions were inadequate to show a contraindication to COVID vaccination based on either her alleged allergies or alleged thrombophilia demonstrates that her requested accommodation was not a reasonable accommodation as a matter of law, and is fatal to her claim.

### 4.    Even if Plaintiff Could Establish That She Had a Contraindication to the mRNA Vaccines, MGB Offered a Reasonable Accommodation

Even if Plaintiff could show that her submissions indicated a contraindication to any particular COVID vaccine, it is undisputed that MGB offered a reasonable accommodation as a matter of law: vaccination with a different vaccine.

As set forth above, Plaintiff's submissions were insufficient as a matter of law to establish that

15

she had a severe or immediate allergy to PEG or PS80.  Moreover, even if the cursory description of a reaction to MiraLAX were sufficient to notify MGB that she had a diagnosed severe or immediate PEG allergy that might restrict her ability to receive an mRNA vaccine (it was not), that would still not establish a contraindication to *all* types of COVID vaccines.[7] Under the CDC guidance, having a contraindication to one type of vaccine did not preclude an individual from receiving the other type of vaccine. SOUF II ¶29. Additionally, the CDC guidance specifically provides that some people with a contraindication to the mRNA vaccines "may be able to receive [J&J] Vaccine after a detailed risk assessment and possible allergy testing." SOUF II ¶28. Here, it is undisputed that under the Vaccination Policy, employees could receive any of the then-available vaccines: Pfizer, Moderna, or J&J. SOUF II ¶30. It is further undisputed that OHCP expressly offered to Plaintiff in the written interactive process: "The recommendation is that you consult an allergist for your specific concerns, *as well as to evaluate whether a non-mRNA vaccine should be considered as a possible option.*" SOUF II ¶108 (emphasis added). On this record, Plaintiff's request to be exempted from all COVID vaccines was not reasonable, and MGB offered a reasonable accommodation as a matter of law. *See* Steinberg Aff. ¶28, Exhibit 27 (*Risser*, No. 1:24-cv-13230-WGY, Dkt. No. 85 (MGB's offer of an mRNA booster where the plaintiff alleged an allergic reaction to a non-mRNA vaccine "was, as a matter of law, reasonable," under same policy and process at issue here)); *McCarthy*, 2024 WL 3416025, at *4 (dismissing disability claim against MGB on grounds that exemption from a Booster Policy based on prior alleged reaction to mRNA vaccines was not reasonable given that employee could have complied by taking a non-mRNA vaccine).

---

[7] Because Plaintiff's submissions did not provide *any* description of the nature or timing of her alleged reactions to the medications listed in Dr. Navarra's letter—aside from the description in her initial request of her self-reported reaction to taking MiraLAX (which contains PEG)—there is no basis on which Plaintiff could conceivably establish that she notified MGB of a severe or immediate reaction to any of the other medications, including those that contain PS80. Additionally, with respect to the type of severe anaphylactic reaction that could constitute a contraindication to some COVID vaccination, Plaintiff alleged only in this litigation—but indisputably did not indicate in her medical documentation—that she experienced this type of reaction only to Cipro (which can contain PEG). SOUF II ¶134. Given these undisputed facts, Plaintiff does not have *any* basis for asserting that she had a severe allergic reaction to PS80, much less that she put MGB on notice of such a reaction. Accordingly, Plaintiff demonstrated no contraindication to the J&J vaccine.

325094993v.12

**B.      MGB Cannot Be Held Liable Under the ADA Because Plaintiff Failed to Cooperate in the Interactive Process as a Matter of Law**

It is black-letter law that an employer can require appropriate medical certification from an employee requesting a medical accommodation and that the employee must provide it as part of the required interactive process. *See* U.S. EEOC, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA* (October 17, 2002) ("[A]n employer may ask the individual to fill out a form … [and] also may request reasonable documentation that the individual has an ADA disability and needs reasonable accommodation.").[8] Moreover, "[a]n employer may require that the documentation about the disability and functional limitations come from an *appropriate* health care … professional." *Id.* (emphasis added); *see also Adams v. Mass. Gen. Brigham Inc.*, No. 21-11686-FDS, 2023 WL 6318821, at *10 (D. Mass. Sept. 28, 2023) (quoting EEOC Guidance). This is part of the interactive process, which "requires both the employer and employee to engage in meaningful dialogue, in good faith"; where an employee fails to cooperate, "the employer cannot be held liable under the ADA for a failure to provide reasonable accommodations." *Ortiz-Martinez*, 853 F.3d at 605 (internal quotations and citation omitted).

**1.      Plaintiff Failed to Provide Medical Documentation from an *Appropriate* Treating Provider with *Relevant Expertise***

Plaintiff's claim fails because she failed to provide medical documentation from an *appropriate* treating provider with *relevant expertise* to substantiate her claimed need for an accommodation. *See* Order on Defendants' Motion for Summary Judgment, *Morrill v. Beth Israel Deaconess Med. Ctr., Inc.*, No. 24-11041-LTS (D. Mass. April 10, 2026), Dkt. No. 63 (stating that "[a]s part of the medical exemption process, [the hospital] required applicants to submit supporting medical documentations by their healthcare providers, as they are entitled to do," and that they can require that this documentation come from "an appropriate" health care provider) (citing and quoting *Adams*, 2023 WL 6328821, at *10); *see also Tarquinio v. Johns Hopkins Univ. Applied Physics Lab*, 141 F.4th 568, 575 (4th Cir. 2025) ("[I]f the employee prevents the employer from understanding her disability, then the employer's duty never

---

[8] The EEOC's ADA Title I enforcement guidance is entitled to weight in interpreting the statute. *See*, *e.g.*, *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 673 (1st Cir. 1995) ("as a detailed analysis of the relevant ADA provisions," EEOC guidance "aids our interpretation of the statute").

17

arises, and the employee's claim fails."). An appropriate health care professional is one who has the requisite *expertise* to provide an opinion regarding the employee's disability and the resulting limitations. *See* U.S. EEOC, *Enforcement Guidance: Disability-Related Inquiries and Medical Examinations Under the ADA* (July 26, 2000) ("Documentation might also be insufficient where…:the health care professional does not have the expertise to give an opinion about the employee's medical condition and the limitations imposed by it."). "If an employee provides insufficient documentation, an employer does not have to provide reasonable accommodation until sufficient documentation is provided." *Id.*

As such, MGB was entitled to require sufficient documentation from an *appropriate* treating provider supporting Plaintiff's claimed conditions and need for a medical exemption from the Vaccination Policy, and MGB had no duty to provide an exemption until it received such documentation. To that end, MGB required employees to submit an exemption request form completed and signed by the employee's treating provider. SOUF II ¶39. Additionally, when needed to validate the existence of a disability or need to avoid vaccination, MGB requested further documentation from a specialist with relevant expertise, such as an allergist. SOUF II ¶34.

Here, it is undisputed that the provider that Plaintiff calls her "dermatologist," who allegedly diagnosed her with her alleged allergies, would not support her exemption request, admitting that she was not "an expert in this area." SOUF II ¶¶52, 70. Thus, Plaintiff was on notice—from her own provider who had allegedly diagnosed her for allergies—that specific medical expertise was required.   After her dermatologist declined to sign her medical exemption form, Plaintiff first submitted a request from the NP in her PCP's office and then a letter from her PCP. SOUF II ¶¶74, 94-95. The request and letter from Plaintiff's primary care providers are the only medical documentation that Plaintiff submitted in support of her exemption request. SOUF II ¶86.

Neither of these providers, however, had the requisite expertise with respect to Plaintiff's alleged allergies. It is undisputed that neither of these providers diagnosed Plaintiff's allergies, that they are not allergists, and that they do not practice in any relevant medical specialty or sub-specialty related to

18

allergies. SOUF II ¶¶50, 75-76. Moreover, it was evident from the submissions themselves that these providers lacked the requisite expertise; the submissions did not even contain the most basic information about Plaintiff's alleged allergies—which would have been needed to evaluate her allergies under the CDC guidance—including the specific nature, severity, and timing of those allergies. When, as here, there was a concern about a possible CDC contraindication due to an allergy to a vaccine ingredient, MGB's occupational health professionals reasonably concluded it was essential to have an allergist involved, as an allergist had the appropriate expertise to help determine not only if there was an actual contraindication, but also what options might be available to safely administer a vaccine, including whether a non-mRNA vaccine was an option or any precautions to be taken. On these undisputed facts, Plaintiff cannot show that she submitted medical documentation from an *appropriate treating* provider with *relevant expertise*, as MGB reasonably requested in the interactive process. As such, Plaintiff's claim fails as a matter of law.

### 2. Plaintiff Was Responsible for the Interactive Process Breakdown When She Refused to See an Allergist After Her Request Was Denied

Plaintiff's failure to accommodate claim fails as a matter of law for the independent reason that she was responsible for the breakdown in the interactive process. When a breakdown in the interactive process occurs, "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Enica v. Principi*, 544 F.3d 328, 339 (1st Cir. 2008). Where the employee withdraws from the interactive process, the employer cannot be held liable for failure to accommodate. *See Ortiz-Martinez*, 853 F.3d at 605.

When MGB identified the deficiencies in Plaintiff's medical documentation—that it failed to indicate a contraindication to COVID vaccination and that it was not from an allergist—it offered her an opportunity to cure those deficiencies. Specifically, consistent with MGB's process and CDC guidance, MGB: recommended that Plaintiff consult an allergist to address her concerns including to evaluate whether a non-mRNA vaccine should be considered; offered to facilitate a referral to one of its allergy

19

departments for a consultation; and, informed Plaintiff that she could resubmit her exemption form after consulting with an allergy specialist. SOUF II ¶108. Plaintiff refused. SOUF II ¶109. It is undisputed that she did not take MGB up on its offer to refer her to an allergist; did not consult an allergist after her request was denied;[9] did not obtain additional documentation from a treating provider with relevant expertise; and did not submit any additional information in support of her exemption request. SOUF II ¶¶109, 111-19.  Moreover, when pressed about why she refused at her deposition, Plaintiff had nothing: she claimed that she "had already seen an allergist outside of MGH[,]"stated that she did not see physicians within the MGB system, and asserted that she "did not feel the need to seek out anybody else's opinion as [Dr. Navarra] was [her] primary care doctor." SOUF II ¶¶115, 118.

Plaintiff's refusal to see an allergist—after MGB expressly recommended an allergist consultation, offered to facilitate a referral, and invited resubmission—was a failure to engage in the interactive process that is fatal to her claim. *See Ortiz-Martinez,* 853 F.3d at 605-606 (affirming summary judgment and holding that plaintiff "was in fact responsible for the breakdown" in the interactive process where she "refused to meaningfully engage after submitting an initial letter … and attending a meeting"); *Tarquinio*, 141 F.4th at 574-75 (affirming summary judgment and holding employer had no duty to provide accommodation where employee requesting COVID vaccine exemption failed to provide requested information to understand her alleged disability and need for the requested accommodation); *Tchankpa*, 951 F.3d at 813 (employer entitled to summary judgment where employee fails to provide "a satisfactory response to [the employer's] request for medical documentation").

## <u>CONCLUSION</u>

For all of these reasons, MGB respectfully requests that this Court: (1) grant MGB's Motion for Summary Judgment, and (2) enter an order dismissing Plaintiff Adams' ADA claim with prejudice.

---

[9] While Plaintiff claimed during her 2022 deposition that she had seen an allergist outside of MGH, it is likely that Plaintiff was referring to the dermatology PA who did the allergy patch testing and not to an actual allergist. SOUF II ¶52. However, even if Plaintiff had previously seen an allergist, she does not allege that she went back to this allergist or any other allergist after her request was denied, and it is undisputed that she did not submit any information to MGB from an allergist. SOUF II ¶¶109, 111-19.

325094993v.12

**Dated:** July 2, 2026

MASS GENERAL BRIGHAM INCORPORATED

By Its Attorneys,
Respectfully Submitted,

*/s/ Dawn R. Solowey*

Kristin McGurn (BBO# 559687)
Dawn Reddy Solowey (BBO# 567757)
Michael Steinberg (BBO# 690997)
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
kmcgurn@seyfarth.com
dsolowey@seyfarth.com
msteinberg@seyfarth.com
TEL: (617) 946-4800
FAX: (617) 946-4801

## CERTIFICATE OF SERVICE

I, Dawn R. Solowey, certify that on July 2, 2026, a true and accurate copy of the foregoing document to be filed and uploaded to the CM/ECF system.

*/s/ Dawn R. Solowey*

Dawn R. Solowey

325094993v.12