**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| TYLER ADAMS, MICHELLE ORFANOS, and JAMIE STEVERMAN, <br><br> Plaintiffs, <br><br> v. <br><br> MASS GENERAL BRIGHAM INCORPORATED, <br><br> Defendant. | Civil Action No. 1:21-cv-11686-FDS |

## MOTION FOR PLAINTIFFS' COUNSEL TO SHOW CAUSE AS TO WHY SANCTIONS SHOULD NOT ISSUE

Defendant Mass General Brigham Incorporated ("MGB") moves the Court to direct Plaintiff's counsel Sujata Gibson, who is in the case *pro hac vice* (ECF Nos. 327, 328), and Gregory Hession to show cause as to why sanctions should not issue for their continued disregard for this Court's Orders, including its Protective Order (ECF No. 60), which they most recently violated repeatedly over MGB's counsel's objections during the depositions of RERC 3 and MED 2 on June 24 and 25, 2026, respectively.[1]

Specifically, Plaintiffs' counsel blatantly violated the Protective Order by needlessly naming an unrelated member of the Religious Exemption Review Committee, RERC 5, in the presence of Plaintiff Orfanos during the deposition of RERC 3 (Plaintiff Orfanos' Communicator). Additionally, despite this Court's clear instruction that the Plaintiffs were not to attend the depositions of other Plaintiffs' reviewers, Plaintiffs' counsel permitted Plaintiff Orfanos to be

---

[1] "RERC" refers to the Religious Exemption Review Committee and "MED" to members of the clinical panels who reviewed exemption requests. MGB filed a key to the pseudonym designations under seal with its 2023 motion for summary judgment. MGB will provide the Court with another copy of that key if necessary.

present in and around the deposition room, where Plaintiff Adams' counsel was taking the deposition of MED 2.

Plaintiffs' counsel also invited purported "law clerks" to attend the depositions of RERC 3 and MED 2. MGB's counsel objected on the record and later learned based on a review of publicly available information that it is unclear whether one of the individuals (an anti-vaccination activist chronicling Plaintiffs' case on social media) is genuinely a law clerk.

MGB further moves the Court to direct Plaintiff's counsel to show cause for what appear to be material disparities between Ms. Gibson's sworn representations to this Court about her purported efforts to obtain discovery materials from Plaintiffs' predecessor counsel, and the contradictory sworn account from predecessor counsel.  In support of this motion, MGB states as follows:

**A.      Ms. Gibson and Mr. Hession Knowingly Violated The Court's Protective Order (ECF No. 60) Over MGB's Counsel's Objections During the Deposition of RERC 3.**

1.      Pursuant to the plain language of the Protective Order (ECF No. 60), "[i]ndividual named plaintiffs may only receive identifying information concerning the members of the committee who reviewed their specific application, and only as directed in this order. Such identifying information may be provided to an individual plaintiff only orally or telephonically, and shall not be provided by other electronic media or in paper form…"

2.      At the June 8, 2026 status conference, the Court reminded Plaintiffs' counsel that "[t]he protective order is still in force."   *See* <u>Exhibit A</u> (excerpt from transcript of June 8, 2026 status conference), p. 17.

3.      At that status conference, MGB alerted the Court that the three Plaintiffs had stated an intent to attend the depositions of one of Ms. Adams' reviewers, and of Ms. Orfanos' "communicator," which would violate the Protective Order.  Mr. Hession stated (incorrectly) that

it "[s]eems like that would not be a problem for the plaintiffs to all attend their [*sic*] other depositions of the other individuals at this point." *See* <u>Ex. A</u> , p. 16.

4.      In response, the Court reminded Mr. Hession that "[t]he protective order is still in force" and noted that Mr. Hession's request "sounds like a motion to modify the protective order, which is not pending before me." *Id.* at p. 17.

5.      The Court continued, stating that it would "like the depositions to go forward," adding: "If I modify [the Protective Order], [] [Plaintiffs] can see the transcript at the end of the day. It's not like they need to listen to it…" *Id.*

6.      After further argument by Mr. Hession, the Court made it clear that the depositions should go forward *without Plaintiffs present* for each other's reviewer's deposition, stating: "If you want to modify the protective order, file a motion… I want these depositions to go forward. However this turns out, it strikes me as being not necessary to resolve this before the depositions go forward." *Id.* at p. 18.

7.      Plaintiffs did not file a motion to amend the protective order before the depositions.

8.      Plaintiffs scheduled the two depositions at the law office of Gens & Stanton P.C., a criminal law firm in Dorchester at which none of the Plaintiffs' counsel of record work.  MGB's counsel had offered to host at its offices in Boston but agreed to Plaintiffs' venue of choice. *See* <u>Exhibit B</u> (redacted deposition notices).

9.      Plaintiff Orfanos, through her counsel Mr. Hession, and with Ms. Gibson in attendance by Zoom, took the deposition of RERC 3 on June 24, 2026 at the office of Gens & Stanton P.C. *Id.*

10.      RERC 3 was the Communicator for Plaintiff Orfanos.

11. Pursuant to the Protective Order (ECF No. 60), like other plaintiffs who sought religious exemptions, Plaintiff Orfanos was entitled to learn the name of her own Communicator only, and only orally.

12. Plaintiff Orfanos attended the deposition of RERC 3 in person. *See* Exhibit C (Excerpt from RERC 3 deposition, redacting all witness testimony), p. 2.

13. During the deposition, Mr. Hession, in violation of the Protective Order, introduced an unredacted copy of an excerpt from the deposition transcript of *RERC 5* (who was *not* Plaintiff Orfanos' communicator) as Exhibit 4. *See* Ex. C, pp. 54-57.

14. Mr. Hession then began to ask questions about the document, improperly referring to RERC 5 by name right in front of Plaintiff Orfanos. Ex. C, p. 54. Mr. Hession thus disclosed the identity of RERC 5 to Plaintiff Orfanos in direct violation of the Protective Order. Counsel for MGB objected immediately and vigorously. Ex. C, p. 54:

> Q. …This is a deposition [transcript] of an individual by the name of [RERC 5].[2] Do you know her?
>
> A. *I do not.*
>
> Q. You've never heard the name?
>
> A. *I do not recall.*
>
> Q. Okay.
>
> Mr. Steinberg for MGB: Hold on a minute… [] [W]e have a protective order in this case… [] You are introducing a transcript that is an attorneys' eyes only document that per ECF 60 multiple people in this room are not allowed to see and asking the witness questions about it on the record.
>
> Mr. Hession for Plaintiff Orfanos: Yes.

---

[2] MGB notes that all deposition testimony of members of the RERC and the Clinical Panels that reviewed exemption requests have consistently been filed under seal in this action, including during Phase I summary judgment, as even filing redacted versions was insufficient to protect the identities of those employees. Nor can current Plaintiffs' counsel excuse their behavior by noting that RERC 5 sometimes signed her name to emails she sent employees whose requests she reviewed. The Protective Order is in place to govern conduct in this litigation and they must comply with it.

15.     A short while later, in another flagrant violation of the Protective Order, Mr. Hession asked RERC 3 to identify other members of the RERC in front of Plaintiff Orfanos. *See* Ex. C, p. 76:

> Q.     Was she on the committee too?
>
> Mr. Steinberg for MGB:     Objection… the identities of the committee members are subject to very strict disclosure requirements in this case. You cannot simply ask about random people and whether or not they're committee members.

16.     MGB asks that Ms. Gibson and Mr. Hession be required to show cause as to why they revealed the identity of RERC 5, and documents referring to RERC 5, to Plaintiff Orfanos at the deposition of RERC 3, in violation of the Protective Order.

**B. The Next Day, At the Deposition of MED 2, Ms. Gibson and Mr. Hession Again Knowingly Violated The Court's Protective Order (ECF No. 60) Over MGB's Counsel's Objections.**

17.     Plaintiff Adams, through her counsel Mr. Hession and Ms. Gibson, took the deposition of MED 2 on June 25, 2026 at the office of Gens & Stanton P.C.[3] *See* Ex. B.

18.     MED 2 was one of three individuals on the Occupational Health Clinical Panel that reviewed and denied Plaintiff Adams' request for exemption.

19.     Plaintiff Adams attended the deposition remotely by videoconference. *See* Ex. D, p. 31.

---

[3] When Mr. Hession stated that he had no further questions for the deponent, Ms. Gibson indicated that she had additional questions for the deponent. **Exhibit D**, (Excerpt from MED 5 deposition, redacting all witness testimony), pp. 116-17. MGB noted its objection to this improper tag-team questioning, but in the interest of trying to promote efficiency and to avoid burdening the Court with motion practice on the issue, MGB allowed Ms. Gibson to continue questioning MED 2. *Id.* Despite Ms. Gibson's representation that, "I have just a couple of questions I want to follow up with at the end here," Ms. Gibson's questioning accounts for more than 25% of the pages in the transcript. *See* Ex. D, showing that Mr. Hession questioned the witness from pages 5-116 (111 of the 150 total pages), while Ms. Gibson questioned the witness from pages 117-156 (39 of the 150 total pages).

20.     On the morning of the deposition of MED 2, while Mr. Hession (for Plaintiffs), Ms. Solowey (for MGB), and the court reporter were in the conference room setting up for the deposition and awaiting the imminent arrival of the deponent, Plaintiff Orfanos walked into the deposition room.  She served coffee to Mr. Hession, greeted those in the room, and passed out waters to others in the room.  Exhibit E (Declaration of Dawn R. Solowey ("Solowey Dec.")), ¶ 2.

21.     MGB's counsel immediately and strenuously objected to Plaintiff Orfanos' presence at the deposition given the Protective Order.  Solowey Dec. ¶ 2; Ex. D, pp. 4-5.

22.     Under the Protective Order, Plaintiff Orfanos is allowed to learn only the name of the person who decided her religious exemption request, RERC 3 – not the identity of the reviewer of Plaintiff Adams' (medical) request. *See* ECF No. 60.

23.     At first, Mr. Hession said that Plaintiff Orfanos would not be in the conference room while the deposition was occurring, but would be in the office space nearby. Citing the Protective Order, MGB's counsel objected to her presence in the office where she would inevitably learn the identity of the deponent.  Solowey Dec. ¶ 3.

24.     The conference room where the deposition took place had glass doors, such that the deponent was fully visible to those passing by in the hall, such as Ms. Orfanos.  Additionally, in order to reach the conference room, the deponent had to pass through a waiting room and common hallway.  Solowey Dec. ¶ 5.

25.     Moreover, the HVAC system was not working in the office space (for the second day in a row), on an 80-degree sunny day, making the deposition room extremely hot. The doors had been propped open in an attempt to cool the room down.  However, given that Plaintiff Orfanos was passing back and forth just outside the conference room, MGB's counsel was constrained by the Protective Order to ask that the doors stay closed despite the heat. Solowey Dec. ¶ 6.

6

26.     When the deponent arrived, Ms. Orfanos was still in the offices, just outside the deposition room.  Solowey Dec. ¶ 4.

27.     Mr. Hession eventually said that Ms. Orfanos would be leaving the building, but warned that she would still need to pass by the deposition room several times. He claimed that she had some sort of business that day with the law firm at which Plaintiffs chose to notice the deposition. Solowey Dec. ¶ 7.[4]

28.     MGB's counsel put MGB's vigorous objections on the record.  *See* Ex. D, pp. 4-5 (At the beginning of the deposition, MGB's counsel stated, in part: "The judge clearly ruled that the plaintiffs who are not Ms. Adams could not attend today's deposition. Despite that clear instruction, Michelle Orfanos is, in fact, here in this office suite. We're in a conference room with glass doors, and she has been inside the conference room. She has been walking past the conference room. She has been able to view the identity of the deponent, which is an abject violation of the protective order...")

29.     As a result of these circumstances, the deponent had to testify immediately after learning that, notwithstanding the assurance of the Protective Order, his identity had almost certainly been compromised. Solowey Dec. ¶ 8.

30.     Throughout this deposition practice, Mr. Hession was dismissive of the serious concerns about the Protective Order. *See* i.e. Ex. D, pp. 6-7.

31.     MGB asks that Ms. Gibson and Mr. Hession be required to show cause as to why they permitted Plaintiff Orfanos to be present at the deposition of MED 2, necessarily learning the

---

[4] Even if it were plausible that Plaintiff (a nurse) had legitimate business at this criminal law firm on the day of the deposition, it would have been improper for Plaintiffs to select that location for a deposition that they knew Plaintiff Orfanos was not allowed to attend per the Protective Order and the Court's specific direction.

identity of MED 2, apparently in gross violation of the Protective Order and the Court's explicit direction that she not attend.

**C.      Mr. Hession and Ms. Gibson Further Invited Two People They Variously Referred to as "Paralegals" or "Law Clerks" to Attend the Depositions, Over MGB's Counsel's Objections**

32.      On June 1, 2026, Mr. Hession emailed Ms. Solowey stating that they intended to have "two paralegals" attend the two upcoming depositions of reviewers. *See* Exhibit F (June 1, 2026 email, pp. 1-2).

33.      Ms. Solowey responded that day noting that it was unusual to invite paralegals to attend a deposition and asking why Mr. Hession was proposing that they attend. *Id.* at p. 1.

34.      Mr. Hession did not respond to that message.

35.      Mr. Hession and Ms. Gibson brought someone they identified as a "Law Clerk," Noah Wines, to the deposition of RERC 3.[5] Ex. C, p. 2.

36.      In addition to Mr. Wines, Mr. Hession and Ms. Gibson brought another "Law Clerk," John Beaudoin, to attend the deposition of MED 2. Ex. D, p. 2.

37.      At the deposition of MED 2, MGB's counsel objected on the record to the presence of the two purported "law clerks."  Ex. D, p. 5 (MGB's counsel objected, stating: "I also would note that there are two people who [] don't have appearances in the case who are in the room, and I would like if [counsel] could identify them for the record because it's not clear to me that that's not also a violation of the protective order.").

38.      Mr. Hession represented to MGB's counsel and on the record: "Okay. So these two people work for me. This is John Beaudoin and Noah Wines, both law clerks, both involved with

---

[5] From publicly available sources, Mr. Wines appears to be an actual law student. To the extent he also is a family member of Dr. Jamie Wines, a former plaintiff in this case, that may raise ethical questions about his professional participation in this litigation. *See* ECF No. 140 (Order granting dismissal of claims of former Plaintiff J. Wines, with prejudice).

the summary judgment motion that is going to come out of this deposition, so they're here attending because they're assisting me with the preparation of this motion." *Id.* at pp. 6-7.

39.     In reliance on this representation, MGB's counsel, while noting MGB's objection, permitted the deposition of MED 2 to go forward with these two people in the room.

40.     Following the depositions, concerned about a violation of the Protective Order, MGB reviewed publicly available information about the two purported law clerks.

41.     On information and belief based on publicly available information, Mr. Beaudoin appears to be an anti-vaccination activist who was dismissed from his law school for refusing to vaccinate. *See* Exhibit G ("Curriculum Vitae of John Beaudoin, Sr. Requested to be Public," https://therealcdc.substack.com/p/curriculum-vitae-of-john-beaudoin); *see also Beaudoin v. Massachusetts Sch. of L. at Andover, Inc.*, 105 Mass. App. Ct. 1114, (2025).

42.     Mr. Beaudoin appears to run a Facebook page called "Pro Se 5" chronicling the case of the three remaining Plaintiffs in this action and two other former Plaintiffs, who represented themselves in this action for a period of time. *See* Exhibit H (Snapshot of Facebook page at https://www.facebook.com/ProSeFive/, captured on July 2, 2026).

43.     The Facebook page description states: "John Beaudoin, Sr. tracks the federal court case of 5 former Mass General Brigham employees who represent themselves (Pro Se) in their suit vs. MGB, for denying their religious or medical exemption requests re the Covid-19 vaccine mandates." *Id.*

44.     Mr. Beaudoin also appears to run a website called "Via Vera Vita" (https://viaveravita.com/), which includes links to more than two dozen "podcasts and other appearances" by John Beaudoin, Sr., many of which include Mr. Beaudoin opining about alleged health and safety risks of COVID-19 vaccination.

45.    This website also includes information about two books authored by Mr. Beaudoin, The Real CdC: COVID Facts for Regular People and The CDC Memorandum: Notice of Criminal Liability.

46.    MGB asks that Ms. Gibson and Mr. Hession be required to show cause as to why they invited this member of the public to attend the deposition of MED 2, necessarily learning the identity of MED 2, apparently in gross violation of the Protective Order.

47.    Concerns about violations of the Protective Order were heightened given that Plaintiff Orfanos and Mr. Hession counsel recently gave an interview to an online source that falsely accuses this Court of bias, and that encouraged members of the public to "pack the courtroom to let Judge Saylor see how many are watching." Exhibit I (June 7, 2026 email from Ms. Solowey to the Courtroom Clerk re: "Online Postings about Tomorrow's Status Conference and Case").

**D.    Ms. Gibson Filed a Sworn Declaration Representing to This Court That She Made "Sustained, Good Faith Efforts" for "The Last Year" to  Obtain Client Files from Predecessor Counsel**

48.    The violations of the protective order described above are part of a pattern of disregard for the Court's orders and rules since Ms. Gibson joined the case *pro hac vice* over a year ago.

49.    For example, Ms. Gibson repeatedly represented to the Court and to MGB's counsel that she was unable to obtain the case file from predecessor counsel despite diligent and sustained attempts to obtain it.[6]  The Court and parties invested significant time in responding to those representations and, in reliance on those representations, MGB incurred expense and drained

---

[6] *See e.g.* Exhibit K (transcript of January 27, 2026 status conference, Ms. Gibson told the Court: "we haven't been able to get [discovery] from previous counsel..."), pp. 4-5.

resources to make courtesy re-productions of previously produced documents relevant to Plaintiffs' cases.

50.    On May 5, 2026, Ms. Gibson filed a motion to compel, representing to the Court in the accompanying memorandum of law: "Plaintiffs' counsel made sustained, good-faith efforts to obtain the discovery from both McLane and [Attorney Richard] Chambers, without success." ECF No. 414, p. 19.

51.    In the accompanying sworn declaration dated May 5, 2026, Ms. Gibson stated:

a.    "*For the last year*, myself, my co-counsel Jim Mermigis and more recently our local counsel Gregory Hession have been attempting to get this discovery from Attorney McLane." ECF No. 415, ¶ 116 (emphasis added).

b.    "In or around May of 2025, Lauren Bradford advised me that she could not share the discovery with me." ECF No. 415, ¶ 117.

c.    "Attorney McLane declined to respond to our various attempts to ask him for the documents and discovery. Finally, he agreed to meet with Attorney Hession in person on March 31, 2026…" ECF No. 415, ¶ 119.

d.    "*Throughout the last year*, I have repeatedly asked MGB's counsel to provide me with the discovery, confirming that I was not able to get it from predecessor counsel." ECF No. 415, ¶ 121 (emphasis added).

**E.    Mr. McLane Filed an Affidavit Directly Contradicting Ms. Gibson's Account**

52.    On June 7, 2026, Mr. McLane filed a Notice of Diligent Search and accompanying affidavit that contradicted Ms. Gibson's account.  ECF Nos. 430, 430-1.

53.    In his own sworn affidavit, Mr. McLane stated: "*I do not recall having had any correspondence with either Mr. Hession or Ms. Gibson before March 30, 2026, written or oral.*" ECF No. 430-1, p. 7 (emphasis added).

54.    Greg Hession filed a Notice of Appearance in this case four days before March 30, on March 26, 2026.  ECF No. 387.

**F.      Ms. Gibson and Co-Counsel Submitted Additional Affidavits in Apparent Contradiction To Mr. McLane's – and Ms. Gibson's Own – Affidavits**

55.     After Mr. McLane filed his affidavit on June 7, 2026, Ms. Gibson filed new affidavits the next day.

56.     On June 8, 2026, Ms. Gibson filed a sworn declaration to this Court, writing that "[i]n or around May 2025, I called the telephone number for Attorney Ryan McLane's office listed on the ECF docket. During that call, I spoke with Attorney Lauren Bradford at length regarding Plaintiffs' files and discovery materials. I requested documents and discovery materials relating to Plaintiffs' cases. Attorney Bradford expressed hesitation. She did not provide the requested discovery materials at that time and deferred on the issue." ECF No. 432-1, ¶¶ 3-5.

57.     Ms. Gibson stated under oath: "After that call, I called Mr. McLane's office again at least *once* and possibly more than once and left a message seeking follow-up concerning Plaintiffs' files and discovery materials. I never received a call back." ECF No. 432-1, ¶ 6 (emphasis added).

58.     Mr. Mermigis submitted a sworn declaration on June 8, 2026, claiming that he "attempted to contact Mr. McLane or his office" regarding Plaintiffs' case files and discovery "on more than one occasion" on unidentified dates "[i]n 2025." ECF No. 432-2, ¶ 5.

59.     These representations appear to be contradicted by Mr. McLane's affidavit denying any communications prior to March 30, 2026. *Compare with* ECF No. 430-1, p. 7. They also appear to be materially different from Ms. Gibson's own sworn account dated May 5, 2026. *Compare with* ECF No. 415, ¶ 117.

60.     Ms. Gibson and Mr. Mermigis did not attach phone or other records to support their account of any attempts at communications prior to March 30, 2026.  Nor have they shown that

12

Lauren Bradford even worked at McLane & McLane at the time they claim to have had a single inconclusive phone call with her in May 2025.

61.     Even if Ms. Gibson could show she actually had a single inconclusive phone call with Mr. McLane's former associate Lauren Bradford in May 2025, and even if she or Mr. Mermigis left a single voicemail for Mr. McLane on some unidentified date in 2026, that is—on its face—not a "sustained and good faith" effort to retrieve a client file from predecessor counsel, as she represented to this Court and to MGB.

62.     MGB asks this Court to require Plaintiffs' counsel to show cause as to these material discrepancies.

### G.     Other Violations of the Rules

63.     This recent conduct by Ms. Gibson and Mr. Hession is the latest in what has been a pattern of conduct that disregards this Court's Orders and the Local Rules.

64.     Plaintiffs' counsel routinely file letter motions—*see* i.e. ECF Nos. 370, 383, 385, 397, 418, —even after this Court told them to stop. *Compare* Exhibit J, p. 8 (Excerpt from April 9, 2026 status conference) ("[T]he practice of writing letters to the Court is -- is not to continue.") *with* ECF No. 418 (May 7, 2026 letter motion filed by Ms. Gibson).

65.     Plaintiffs' counsel routinely file motions without including Rule 7.1 conferral certificates. *See* i.e. ECF No. 390, 442.

66.     Plaintiffs' counsel recently filed a reply without seeking leave to do so, as required by the Local Rules. *See* ECF No. 428.

67.     The Court's Order granted leave only to Plaintiff Orfanos to amend her complaint—and only as to a particular set of allegations—but Plaintiffs' counsel moved to amend to add allegations pertaining to Plaintiff Adams and Plaintiff Steverman too and exceeded the scope as to Plaintiff Orfanos. ECF Nos. 373, 379.

68.     When the Court granted the motion as to Plaintiff Orfanos, she opted not to amend in this Court despite having wasted the Court's and MGB's time with her motion, opting instead to forum-shop and file in state court. ECF Nos. 409-410.

**H.     MGB Requests a Show Cause Hearing**

69.     Based on the foregoing, MGB respectfully requests that the Court direct Ms. Gibson and Mr. Hession to show cause as to why sanctions should not issue.

70.     Following any show cause hearing, MGB reserves the right to seek sanctions and other further relief.  The Court has "inherent power to sanction" attorneys who appear before it, and sanctions are appropriate if an attorney makes sworn misrepresentations to the Court. *See e.g., Ryan v. Astra Tech, Inc.*, 772 F.3d 50, 56, 63 (1st Cir. 2014).

For all of these reasons, MGB respectfully requests that the Court grant its Motion to Show Cause.

Dated: July 2, 2026

Respectfully submitted,
**MASS GENERAL BRIGHAM INCORPORATED**

By Its Attorneys,

*/s/ Dawn R. Solowey*

Kristin G. McGurn (BBO# 559687)
Dawn Reddy Solowey (BBO# 567757)
Michael E. Steinberg (BBO# 690997)
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
kmcgurn@seyfarth.com
dsolowey@seyfarth.com
msteinberg@seyfarth.com
TEL: (617) 946-4800
FAX: (617) 946-4801

## **LOCAL RULE 7.1(a)(2) CERTIFICATE**

I hereby certify that counsel for MGB conferred with counsel for Plaintiffs including by email, on and off the record during the referenced depositions of RERC 3 and MED 2, and during the status conference on June 8, 2026, regarding the issues raised in the instant motion in a good faith attempt to narrow the issues.

*/s/ Dawn R. Solowey*
Dawn R. Solowey

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2026, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.  Paper copies will be sent to those indicated as non-registered participants.

*/s/ Dawn R. Solowey*
Dawn R. Solowey