**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TYLER ADAMS, MICHELLE ORFANOS, AND JAMIE STEVERMAN,<br><br>Plaintiffs,<br><br>v.<br><br>MASS GENERAL BRIGHAM INCORPORATED,<br><br>Defendant. | Civil Action No. 1:21-cv-11686-FDS |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' "SUPPLEMENTAL STATUS REPORT," RENEWED MOTION TO MODIFY PROTECTIVE ORDERS, AND MOTION TO COMPEL DISCOVERY**

Defendant Mass General Brigham Incorporated ("MGB") opposes—once again—Plaintiffs' efforts to seek to modify the longstanding, sensible protective orders in this case and to compel discovery that does not exist. Stalling, sowing confusion, peddling conspiracy theories, ignoring the rules, and throwing what this Court has called "hand grenades" at MGB and its counsel are hallmarks of Plaintiffs' tactics, while pro se and as represented by current counsel. This latest Motion is part of that pattern.

First, the motion is far too late. Discovery is closed. At the time of filing: (1) MGB's Motion for Summary Judgment on Plaintiff Steverman's claim has been fully briefed and argued (ECF Nos. 436, 451, 461, 462); (2) MGB's Motion for Summary Judgment as to Plaintiff Adams' claim is fully briefed with argument to be set (ECF Nos. 446, 471, 477); and (3) MGB's Motion for Summary Judgment as to Plaintiff Orfanos' claim is only awaiting MGB's Reply before it will be fully briefed (ECF Nos. 465, ECF No. 480).

Second, Plaintiffs' arguments are frivolous. Plaintiffs shamelessly seek to relitigate issues the Court has decided multiple times despite the Court's repeated admonishments that it is "not

going to relitigate issues all over again." ECF No. 403 (April 9, 2026 transcript) at 7. Plaintiffs have previously filed <u>two</u> failed motions to modify the protective orders, *see* ECF Nos. 263, 307, not counting the hour-plus hearing at which the Parties argued the merits before Magistrate Judge Cabell on April 2, 2025 (ECF No. 296), who then denied Plaintiffs' baseless motion. Plaintiffs have had ample opportunity to make their (meritless) case for modification, and the Court has rejected it at every turn. Their dissatisfaction with that outcome does not entitle them to waste the Court's and MGB's time and resources relitigating the issue over and over again. The motion to compel non-existent documents is also frivolous. In fact, just a little over two months before Plaintiffs filed their Motion, this Court <u>denied</u> Plaintiffs' Motion to Compel the same nonexistent documents they seek to compel again in the instant Motion. ECF Nos. 413, 426.

The Court has already decided all of the issues raised by the present Motion, and it should not entertain them again. MGB respectfully requests that the Court deny Plaintiffs' Motion and grant MGB its attorneys' fees and costs incurred in opposing it.

## <u>ARGUMENT</u>

### I. There Is Still No Good Cause To Modify the Protective Orders—And Critical Reasons To Leave Them In Place

For starters, the Court did not "invite" Plaintiffs' motion as they claim. Motion at 3. In fact, at the status conference on June 8, 2026, the Court actually reminded Plaintiffs and their current counsel that "[t]he protective order is still in force." ECF No. 434 (June 8, 2026 transcript). In that same status conference, the Court merely pointed out to Plaintiffs' counsel that they could not just ignore or complain about the protective orders; if they wanted to avoid the protective orders, they had to file a motion. *Id.* at 17-18. Plaintiffs then waited two more months before filing this Motion while summary judgment was pending or mid-briefing in all three cases.

**A. Protective Order at ECF No. 60**

Given that MGB has opposed this same recycled motion multiple times, MGB incorporates here its arguments in opposition to Plaintiffs' two prior motions. *See* ECF Nos. 271, 308.

The plain language of the Protective Order at ECF No. 60 states, in relevant part:

> Individual named plaintiffs may only receive identifying information concerning the members of the committee who reviewed their specific application, and only as directed in this order. Such identifying information may be provided to an individual plaintiff only orally or telephonically, and shall not be provided by other electronic media or in paper form. No individual plaintiff shall be permitted to discuss or otherwise reveal identifying information concerning such members to anyone other than counsel, for any reason, and by any means. In particular, and without limitation, plaintiffs may not disseminate identifying information of committee members orally, telephonically, in writing, on social media, by e-mail, or by any other electronic means.

ECF No. 60 at 2. The Court drafted this language itself. *See* ECF Nos. 49-50, 60.[1] The Protective Order was simply designed to establish a protocol for disclosure of the identities of the reviewers; as is obvious from its plain language, it is not a protective order that limits discovery. Plaintiffs' confused assertions to the contrary are frankly incoherent. Motion at 10-11.

Plaintiffs' claim that MGB has invoked the Protective Order "as a sword to attack the plaintiffs' attorneys" (Motion at 2, 9-10) is laughable: what actually happened is that Plaintiffs' counsel have repeatedly violated the Protective Order over the past several months, revealing to Plaintiffs the identities of MGB employees who made others' exemption request determinations. *See* ECF No. 450. Those violations form part of the basis for MGB's recent Motion to Show Cause. *Id.*[2] In the five years of this litigation, MGB has never before had to file pleadings to enforce the Protective Order against any other Plaintiff or Plaintiffs' counsel.

[1] Plaintiffs' assertion that the Protective Order was "not based on any documented threats or misconduct" is false and not supported by any citations to the record. If the Court requires additional information on this point, MGB is happy to provide it *in camera*.
[2] Plaintiffs' Oppositions to the Motion to Show Cause and accompanying sworn declarations are replete with falsehoods. To cite just one of many, Attorney Sujata Gibson represented that MGB had not complied with a certain direction from the Court at the June status conference that she did not even attend. ECF No.

In a sworn declaration filed with the Motion, Plaintiff Steverman even admits that she has violated the Court's Order. *See* ECF No. 474-4 at ¶8 ("As one of the original *pro se* plaintiffs coordinating our joint litigation efforts, I shared information about my exemption process once *pro se* including the identity of RERC 5 with the other *pro se* plaintiffs (including Tyler Adams and Michelle Orfanos) for the sole purpose of litigating our cases together.") (emphasis added). But Plaintiff Steverman was only pro se from October 22, 2024 (ECF No. 240) to May 28, 2025 (ECF Nos. 327-28), years after the Court had entered the Protective Order in December 2021. ECF No. 60. Plaintiffs also brazenly admit to additional violations in their Motion, writing that "the Court should also consider that disclosure of some reviewer identities over the past several years has resulted in no harm." Motion at 10. And in MGB's Motion to Show Cause (ECF No. 450), MGB documented Plaintiffs' most recent egregious violations, which they conceded in their oppositions.[3] ECF No. 469. Make no mistake: Plaintiffs ask the Court to modify the Protective Order at ECF No. 60 to absolve them of their repeated violations of it. The Court should decline to do so. Parties must respect court orders, and when they do not, there should be consequences.

With the instant Motion, Plaintiffs inadvertently prove the ongoing necessity of the Protective Order: they concede to the Court that they want to share information about MGB employees who made exemption request determinations. Motion at 15. But each Plaintiff already has the information that she needs about the individual(s) involved in deciding her exemption

469 at 10 (Gibson Opposition); ECF No. 469-1 (Gibson Affidavit ¶34). In fact, MGB did comply, the very next day, in email correspondence acknowledged by Plaintiff's counsel Greg Hession with Ms. Gibson copied. *See* Exhibit A. Due to the sheer volume of misrepresentations in Plaintiffs' Oppositions, MGB opted not to file a Reply so as to spare the Court additional briefing on collateral issues.

[3] Plaintiff Orfanos admits she was present at the deposition of Medical Panelist 2 in direct violation of the Protective Order and the Court's directive from the immediately preceding status conference; she offers no good reason why. ECF No. 450 at 5-8. She tries to minimize her violation by claiming that she was already familiar with Medical Panelist 2 (Motion at 5)—but she misses the point: the sensitive information covered by the Protective Order is that Medical Panelist 2 made determinations about Adams' medical exemption request in 2021. Under the Protective Order, Plaintiff Orfanos was prohibited from learning that.

request: Plaintiffs Orfanos and Steverman each deposed her own Communicator,[4] *see* ECF No. 415-7 (description of Communicator designation), and Plaintiff Adams deposed a member of the Medical Panel that denied her exemption request. *See* ECF Nos. 421-4, 449-1, 450-4. A medical exemption plaintiff has no legitimate need for religious reviewer information and vice versa. Summary judgment is pending in two cases and almost fully briefed in the third.

Finally, as MGB demonstrated in oppositions to the prior baseless motions to modify the Protective Order, MGB notes that the Protective Order was not limited to concern that Plaintiffs themselves would "threaten or assault" employees who reviewed exemption requests. Motion at 4. The concern was—and remains—that once that information is shared beyond an individual Plaintiff, there is no way of controlling how widely it is distributed or what happens next. This Court noted this very risk at a 2025 status conference, when discussing protective orders generally: "[T]here are reasons to have a protective order so that people aren't, you know, posting it on the Internet, and particularly in a case where emotions run high, all it takes is one person who posts it and shares it with someone else, who shares it with someone else, who shares it with someone else, and the next thing you know, we have a problem." ECF No. 277 (February 18, 2025 transcript) at 25. The Court properly observed as recently as June 8, 2026 that this Case involves "three plaintiffs with three different claims in a highly contentious atmosphere involving lots of private information." ECF No. 434 at 17.

Plaintiffs and their current counsel have stoked the highly contentious atmosphere,[5] most recently for a self-promotional story in an online site that peddles false information about various

[4] With their Motion, Plaintiffs rehash their incoherent theory that the Communicator model somehow violated the Protective Order at ECF No. 60. Opp. at 13. MGB has dispelled that bizarre, false accusation multiple times, *see*, e.g. ECF No. 421 at 13, n5, but Plaintiffs continue their campaign of misinformation.

[5] *See* ECF No. 450-9 (Ex. I to Motion to Show Cause, email from MGB to Clerk alerting the Court of online postings about the litigation, including interviews given by Plaintiff Orfanos and Attorney Greg Hession).

MGB employees by name and criticizes this Court.[6] In online solicitations about this case, Plaintiffs (mis)characterize the case as a "BATTLE AGAINST THE COVID SCHEME."[7]

While Plaintiffs try to wave off MGB's ongoing concerns, they cannot deny that there remains fierce public fervor and politicization about the COVID-19 pandemic. To name just one example, a Senate committee held Dr. Anthony Fauci in contempt of Congress for invoking his Fifth Amendment rights during a Senate hearing just earlier this month.[8] In invoking the Fifth Amendment, Dr. Fauci cited a sitting Senator's public statements about his desire to incarcerate him.[9]

These issues remain live—and the Protective Order has not affected any Plaintiff's ability to prosecute her claims through summary judgment. There is no reason, let alone good cause, to modify the Protective Order. *See* ECF Nos. 271 at 4-6 (collecting cases).

**B. Protective Order at ECF No. 69**

Plaintiffs also seek modification of the Stipulated Protective Order in this case. *See* ECF No. 69. But all of the Parties, including all remaining Plaintiffs, jointly requested entry of the Protective Order at ECF No. 69 on February 22, 2022. See ECF No. 67 (Joint Motion for Entry of Stipulated Protective Order) and No. 67-1 (Stipulated Confidentiality Protective Order). Plaintiffs were all represented by counsel at the time. *See* ECF No. 59. The Court has repeatedly instructed Plaintiffs that "any agreement made by predecessor counsel is binding on the plaintiffs. That includes any agreement that counsel made as to the scope of discovery, as to confidentiality

---

[6] Maureen Steele, The Last Nurse Standing, PJ Media, https://pjmedia.com/maureen-steele/2026/07/01/the-last-nurse-standing-n4954560 (last visited Aug. 17, 2026), copy attached as Exhibit B.

[7] *See e.g.* https://www.facebook.com/BrocktonRepublicanCC/posts/-urgent-stand-with-the-final-3-in-federal-court-join-us-tuesday-july-14-2026-200/122134776351200959/ and see PDF attached as Exhibit C.

[8] *See* Maria Ramirez Uribe, Why Was Fauci Held in Contempt for Pleading the 5th and What Happens Next?, PBS NEWS, https://www.pbs.org/newshour/politics/why-was-fauci-held-in-contempt-for-pleading-the-5th-and-what-happens-next (last visited Aug. 14, 2026).

[9] *Id.*

designations, how to handle privilege designations, any waiver of rights. All of that is binding … No matter who counsel is for any party in every case, they make choices. And part of the rules of the game are you live with the consequences of those choices …”[10] ECF No. 403 (April 9, 2026 transcript) at 6. Finally, MGB notes that the Protective Order at ECF No. 69 is a standard confidentiality protective order that parties routinely agree to in litigation. As with the Protective Order at ECF No. 60, there is no good cause to disturb this Order, particularly at this late juncture.

## II. The Motion to Compel Is Frivolous: The Court Denied the Same Motion in June and MGB Is Not Withholding Any Responsive Documents

### A. There Are No “Decision Reports” for Religious Requests

In their Motion, Plaintiffs seek the following relief related to compelling discovery:

> Order MGB to produce, within 14 days, the SharePoint/Microsoft Approvals decision reports (in the same format as MGB000029198) for Orfanos’ 2021 and 2024 exemption requests and Steverman’s 2021 exemption request.

Motion at 15. Plaintiffs sought this exact same nonexistent material in their May 5, 2026 Motion to Compel (ECF No. 414 at 22), which the Court denied. ECF No. 426 at 7.

This request conflates the medical and religious processes by assuming based on one medical exemption document that similar must exist for the religious requests. But it has been established for <u>years</u> now, and admitted by Plaintiffs themselves, that the Religious Exemption Review Committee process was <u>wholly separate</u> from the Medical Exemption Panel process. ECF No. 154 at 65 (¶153). As MGB has repeatedly made clear: there are no “decision reports” (a term invented by Plaintiffs’ counsel) for individuals who sought religious exemptions from MGB’s Vaccination Policy.[11] MGB has repeatedly advised that it has produced the only such report in its

---

[10] The Court revisited this instruction weeks later at the April 27, 2026 status conference, stating: “New counsel does not get to revisit decisions made by prior counsel because they disagree with them. A person or party who is represented by counsel is stuck with those decisions with fairly rare exceptions.” ECF No. 411 (April 27, 2026 transcript) at 16.

[11] Plaintiff Orfanos’ request for discovery related to her 2024 exemption request is bewildering in light of her misuse of the Court’s resources and blatant forum shopping on that claim. *See* ECF No. 421 at 4 (discussion of Orfanos forum shopping).

records for Plaintiff Adams. *See* e.g. ECF No. 421 at 13. And yet Plaintiffs have perseverated on this fool's errand for many months now.

**B. Plaintiffs' Fabrications about the RedCap System**

Plaintiffs peddle other absurd fabrications about the discovery record. They claim "plaintiffs have never received in discovery" "a so-called RedCap database." Motion at 6. They pretend that it was somehow a surprise when RERC 3 mentioned the RedCap system at deposition. *Id.* And yet as all parties have known for years, RedCap was the system that employees used to submit their religious exemption requests, and it is prominently branded on the bottom of each exemption request, including Plaintiff Orfanos' and Plaintiff Steverman's. ECF Nos. 439-6, 438-5. MGB produced the complete RedCap database in discovery showing data related to Plaintiffs' and approvals' religious exemption requests. If Plaintiffs had reviewed the transcript of RERC 11's August 31, 2022 deposition, they would have seen that the term "Red Cap" appears 22 times. That Plaintiffs would waste the Court's time with such an issue without a shred of foundation reveals how little they have invested in actually learning the case record.

**C. There Is No "Long-Withheld Written Discovery" and the Time to File Motions about Phase 1 Discovery Was in 2022**

Plaintiffs falsely suggest that they "still do not have Plaintiff specific records of the final three plaintiffs." Motion at 2. As reflected in a sworn affidavit from MGB's counsel, MGB has produced all non-privileged, responsive documents in its possession, custody, or control related to each Plaintiff's exemption request. ECF No. 421-3 at ¶14.

In their request for relief, Plaintiffs seek phantom "long-withheld written discovery." There is no "long-withheld written discovery." Plaintiffs were represented by counsel in 2022 when written discovery was exchanged and negotiated. The deadline for motions on that subject expired in December 2022. ECF No. 109. Plaintiffs' recycled false allegations about the discovery process (see Motion at 10-13) have been debunked by MGB repeatedly and the Court has rejected them

before. ECF Nos. 421, 426. MGB has no further responsive documents to produce, and Plaintiffs are well aware of that.

Though their request for relief is largely unintelligible, Plaintiffs even seem to ask the Court to allow them to propound new written discovery, while summary judgment is pending and long after both Phase I written discovery, and even Phase II discovery, is over. Motion at 15-16. This is both untimely and futile. MGB has long since met its discovery obligations in full.

### D. Plaintiffs Filed No 56(d) Motion, It is Too Late Now, and It Would Be Futile

#### 1. Plaintiffs Filed No 56(d) motion and It Is Too Late Now

Plaintiffs opposed each of the Phase II summary judgment motions on the merits. They filed no motion pursuant to Fed. R. Civ. P. 56(d) ("Rule 56(d)") to show that "for specified reasons, [they] cannot present facts essential to justify [their] opposition." Rule 56(d) requires that a specific process be followed. If it were true that any Plaintiff could not "present facts essential to justify its opposition" (which it is not), Rule 56(d) was the appropriate avenue, and the Court told Plaintiffs this expressly months ago.[12] In fact, the parties have exchanged voluminous discovery and Plaintiffs have opposed each dispositive motion on the merits.

While Plaintiffs purport to seek relief in the form of "[a]n opportunity to amend previously submitted oppositions to MGB summary judgment motions," Opp. at 16, there is no such relief available, in the form of a do-over, in federal court. By opposing each motion on the merits without

[12] At the April 27, 2026 status conference, Attorney Hession stated: "I think summary judgment really couldn't be reasonably attempted until we have that other information…" The Court responded: "Well, there is a provision under Rule 56 for responding to that, if that's true. If you think you're not—if there's discovery you think ought to be produced and you think you're entitled to it—again, you can't pretend that this case has not been sitting here for five years and that these parties were represented by prior counsel. But you can file what you think you need to file." ECF No. 411 (April 27, 2026 transcript) at 29-30.
At the May 21, 2026 status conference, Attorney Hession stated: "if they file a motion for summary judgment now before we've been able to do just this very limited thing, then it's inevitably going to result in a Rule 56 objection, and then we're going to have to stop, there's going to have to be motion hearings, a lot more for everybody, including the Court..." ECF No. 440 (May 21, 2026 transcript) at 6.

filing a Rule 56(d) motion, Plaintiffs forfeited any argument that they needed further discovery in order to respond to MGB's motions. *See Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 989 (1st Cir. 1988) (holding that conclusory statements that discovery "should be commenced" and that "additional facts need to be established" were not enough to take cover under Rule 56(d) where the plaintiff opposed summary judgment on the merits; emphasizing that the plaintiff "hoisted the Rule 56(f)[13] banner too late" and had chosen to litigate summary judgment "with the ammunition it had on hand.").

Each case is ripe for summary judgment, and Plaintiffs cannot turn back the clock.

**2. Any Belated 56(d) Motion Would Be Futile**

Any 56(d) Motion would also be futile. Rule 56(d) requires the nonmovant to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Plaintiffs have not made, and cannot make, that showing. As demonstrated above, MGB has met all of its discovery obligations and Plaintiffs are not actually missing any relevant documents. The documents Plaintiffs seek either do not exist or were produced years ago. Plaintiffs already filed a Motion to Compel (ECF No. 414), which the Court granted in part to allow two additional depositions, and denied in part (ECF No. 426). Plaintiffs have taken the two depositions allowed by the Court's Order (ECF Nos. 449-1, 450-4). This Court was clear in its Order that there would be no additional discovery: "No further depositions or extensions will be granted." ECF No. 426 at 4.

Moreover, Plaintiffs have identified no additional discovery that is essential to defeating summary judgment. And there is none. MGB moved for summary judgment on the Title VII claims of Plaintiffs Steverman and Orfanos, each a patient-facing nurse treating vulnerable patients at

[13] Prior to 2010, what is now Rule 56(d) was Rule 56(f). *Emigrant Residential LLC v. Pinti*, 37 F.4th 717, 724 (1st Cir. 2022).

close range, on the grounds that it has established that allowing them to continue working unvaccinated in a global pandemic was an undue hardship as a matter of law. *See* ECF Nos. 436, 465. MGB moved for summary judgment on the claim of Tyler Adams on the grounds that she cannot establish a *prima facie* case under the ADA for reasons including that she did not submit documentation to MGB of a CDC contraindication to any of the available COVID-19 vaccines. ECF No. 446. Plaintiffs have not shown (much less by the means required by the rule) any specified reasons why it cannot present facts essential to justify their opposition. To the contrary, they have filed 20-25 page oppositions to each motion, replete with citations to the voluminous record on the relevant issues. *See* ECF Nos. 451, 471, 480. Any 56(d) motion would be not only untimely but futile. *Limoli v. Delta Air Lines, Inc.*, 2019 WL 6253269 at *4 (D. Mass. 2019) (Saylor, J.) (refusing to deny summary judgment based on 59(d) where plaintiff's counsel "does not identity what facts he expects, or even hopes, to develop by deposition that are essential to defeating summary judgment").

### E. Plaintiffs Grossly Misrepresent the Phase II Depositions of MGB Witnesses

Plaintiffs' characterization of the Phase II Depositions of Medical Panelist 2 and RERC 3 is baseless. Plaintiffs chide the deponents for not having specific recall of Plaintiffs' exemption requests—one request out of <u>many</u> that each reviewed—five years after the fact.[14] They cite to certain testimony by Medical Panelist 2 about the medical exemption process as if it is new, when it has been long established in the record. *See* Motion at 7-8.

Plaintiffs even resort to baseless and defamatory attacks on MGB's counsel, falsely accusing two separate MGB attorneys of coaching the witnesses during depositions and making

[14] While Plaintiffs falsely claim that they did not benefit from the stays in this case to pursue settlement resolution, in reality Plaintiffs agreed to those stays and—while represented by current counsel—voluntarily participated in settlement negotiations including a mediation process. Motion at 4.

improper objections. Motion at 8. MGB's attorneys conducted themselves with professionalism and complied with the rules as they have throughout the litigation. It is unfortunate that the Plaintiffs and their current counsel have deviated so sharply from the cooperative and respectful approach with which the parties litigated this case for years, including with multiple different Plaintiffs' attorneys, and through complex discovery, well over one hundred depositions, and resolution of over two hundred claims. The Court should not permit the Plaintiffs' improper tactics.[15]

### III. The Court Should Award MGB Its Fees and Costs in Opposing This Frivolous Motion

This Court has already taken under advisement MGB's requests for fees and costs with respect to MGB's Motion to Strike the improper "expert" declarations Plaintiff Steverman filed with her Opposition to MGB's Motion for Summary Judgment on her claim. ECF No. 454.[16] MGB's Motion to Show Cause as to Why Sanctions Should Not Issue (ECF No. 450) is also pending. Against that backdrop, Plaintiffs have filed the instant frivolous motion, forcing MGB to spend yet more resources re-litigating issues already resolved by the Court and already covered by prior motion practice. An order requiring Plaintiffs to pay MGB's attorneys' fees and costs in opposing this Motion is in the interest of justice and will serve as a much-needed deterrent to future baseless motion practice.

## CONCLUSION

For all of these reasons, MGB respectfully requests that the Court deny Plaintiffs' Motion and order Plaintiffs to pay the attorneys' fees and costs MGB incurred in opposing it.

---

[15] Plaintiffs attached only a selective portion of the meet and confer correspondence about their instant motion. The full correspondence, complete with emails from Plaintiffs' counsel featuring incorrect information that appears to be generated by ChatGPT, is attached as Exhibit D (July 22, 2026 3:55 pm apparently AI-generated email and earlier thread) and Exhibit E (July 22, 2026 4:49 pm email and earlier thread).

[16] The Court granted that Motion on the grounds that the "experts" whose opinions on vaccine efficacy Plaintiff Steverman appended into her summary judgment opposition were irrelevant to her motion. ECF No. 463 (July 14, 2026 transcript) at 4.

**Dated:** August 21, 2026

Respectfully submitted,

MASS GENERAL BRIGHAM INCORPORATED

By Its Attorneys,

*/s/ Dawn R. Solowey*

Kristin McGurn (BBO# 559687)
Dawn Reddy Solowey (BBO# 567757)
Michael Steinberg (BBO# 690997)
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
kmcgurn@seyfarth.com
dsolowey@seyfarth.com
msteinberg@seyfarth.com
TEL: 617-946-4800
FAX: 617-946-4801

## CERTIFICATE OF SERVICE

I, Dawn R. Solowey, certify that on August 21, 2026, a true and accurate copy of the foregoing document to be filed and uploaded to the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants..

*/s/ Dawn R. Solowey*
Dawn R. Solowey