**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **TYLER ADAMS,**<br>**MICHELLE ORFANOS,**<br>**JAMIE STEVERMAN,**<br>Plaintiffs<br>vs.<br><br>**MASS GENERAL BRIGHAM, INC.**<br>Defendant. | ) | **Civil Action No. 1:21-CV-11686-FDS** |

**Plaintiff Orfanos and Steverman's Response to**
**Notice of Supplement Authority to Summary Judgment**

Plaintiffs Michelle Orfanos and Jamie Steverman respectfully respond to Defendant Mass General Brigham Incorporated's Notice of Supplemental Authority concerning *Jangl v. Secretary of the Executive Office of Health and Human Services*, No. 25-P-168 (Mass. App. Ct. Oct. 15, 2026) (hereafter, "*Jangl*"), filed at ECF 492.

This response addresses only the significance of *Jangl* and does not seek to reopen the record or repeat the parties' summary-judgment briefing.

## I. *Jangl*'s Distinction of *Jeune* Underscores the Evidentiary Dispute Here

The Mr. Jangl in this case was a social worker at the Massachusetts Dept. Of Children and Families who brought a claim for religious discrimination when he was fired for failure to take a COVID vaccination. The court determined that the agency could not accommodate his daily close client contact and was justified in terminating him.

MGB argues in its supplement that the *Jangl* case "all but abrogates" *Jeune v. UMass Memorial Health Care System*, 106 Mass. App. Ct. 95, 102 (2025). ECF No. 492 at 2. It does

not. *Jangl* distinguished *Jeune* because the employer in *Jeune* failed to provide evidence establishing that the requested accommodation would impose an undue hardship.

In *Jeune,* the Massachusetts Appeals Court reversed a Superior Court summary judgment in favor of a defendant hospital employer, where the hospital had a religious-exemption policy, where its policy identified masking and testing as possible accommodations, and where it submitted no evidence showing that accommodating the plaintiff would create an undue hardship for the defendant. *Jeune*, 106 Mass. App. Ct. at 102. *Jangl,* by contrast, preserves, rather than eliminates, *Jeune*'s central principle: an employer must prove undue hardship on the record before the court, not merely characterize the risk in conclusory terms as MGB has done..

MGB also argues that *Jeune, "*was already inapposite to the instant cases, both because the record was readily distinguishable and because the *Jeune* court expressly distinguished this very MGB case in its holding." (See *Jeune* at 106 Mass. App. Ct. at 103). The *Jeune* court referenced this court's order on the plaintiff's 2021 motion for a preliminary injunction in this case, (*Together Employees v. Mass. General Brigham, Inc.,* 573 F. Supp. 3d 412 (D. Mass. 2021)), which the Appeals Court notes was pre-*Groff*. (*Jeune,* fn 12) The *Jeune* court actually only distinguished the facts developed at the time of a five year old preliminary injunction record, which has been substantially expanded in these summary judgment motions, and would now be quite inapposite.

The record in these summary judgment motions is materially different from the uncontroverted record in *Jangl* (and *Jeune* as well.). There, the state employee failed to provide evidence to oppose substantial portions of the employer's factual showing, and the employer submitted unrebutted affidavits addressing the employee's specific duties, contact with vulnerable children, emergency responsibilities, staffing shortages, and the inadequacy of his

proposed alternatives. The employee principally responded that vaccination did not prevent infection or transmission.

Plaintiffs here do not solely rely upon that generalized efficacy argument. Instead, Plaintiffs Orfanos and Steverman relied on information available to MGB and on MGB's own evidence concerning the magnitude and practical impact of accommodating these particular employees. They did not offer that evidence to prove that vaccination conferred no benefit, but to show that, by August 2021, MGB knew or had available information materially qualifying any categorical premise that vaccination status was a complete proxy for transmission risk.

This court has stated that the question here is what MGB reasonably believed about the vaccine in the summer of 2021. By then, CDC leadership and MGB's own hospital epidemiologist had acknowledged similar viral loads and transmission potential in the unvaccinated and in vaccinated breakthrough infections. MGB cannot state that, "unvaccinated = grave and deadly risk to patients" (MGB Supp. Memo, P. 3) as undisputed while those materials sit in the same historical moment as the mandate. We are not asking the Court to hold vaccines unsafe or ineffective. We are asking it to deny summary judgment because MGB's threat differential is disputed.

On August 5, 2021, the U.S. Centers For Disease Control ("CDC") Director Dr. Rochelle Walensky—former MGB doctor and member of MGB's Board of Directors—stated that the vaccines could no longer "prevent transmission" and agreed that an asymptomatic vaccinated person could unknowingly infect others. SAC, ECF No. 379-2 ¶¶ 28, 61;

The National Institutes of Health-supported Phase III trial report led by Dr. Lindsey Baden had likewise stated that the trial data were insufficient to determine the vaccine's effect on viral transmission. Lindsey R. Baden et al., *Efficacy and Safety of the mRNA-1273 SARS-CoV-2*

*Vaccine*, 384 New Eng. J. Med. 403, 412 (2021).

In fact, MGB's own evidence was more specific. On August 10, 2021, MGB Hospital Epidemiologist Dr. Michael Klompas stated in MGB's Brigham Bulletin that vaccinated and unvaccinated infected persons had similar viral burdens and that vaccinated persons could transmit the virus. He later confirmed the statement under oath. Klompas Dep., Ex. 7; (Klompas Dep.; P. 154, Line 4.) ECF No. 379-2 ¶ 62.

Significantly to MGB's current summary judgment motion, Dr. Klompas also described the incremental effect of another unvaccinated employee as a "marginal threat" to the system. MGB's Chief Human Resources Officer, Rosemary Sheehan, testified that institution-specific comparative data "did not exist for us," and Dr. Klompas likewise acknowledged that MGB lacked the capacity to conduct that analysis from its own internal data. (Rosemary Sheehan Dep. 74:14–15; Page 137, Line 9-20; Klompas Depo, P. 113, Line. 2-8)

MGB's Infection Control Committee also determined that unvaccinated employees could work in person under existing policies. MGB's internal materials stated that existing policies support a safe environment and that the MGB Infection Committee ("IC") supports the safety of working while masked. SAC, ECF No. 379-2 ¶¶ 29, 36, 40.

This evidence does not ask the Court to adjudicate vaccine efficacy. It creates a factual dispute over whether masking and existing infection-control measures could mitigate the incremental risk presented by these Plaintiffs and whether that risk was materially less than the exaggerated "grave and deadly" risk asserted in MGB's supplemental briefing.

MGB has vigorously and extensively advanced the "pro-vaccine" side of this argument in its summary judgment materials, while at the same time arguing that the plaintiffs should not be allowed to argue that MGB's own information creates a substantial dispute of material fact.

MGB's actual post-termination experience with these Plaintiffs reinforces that dispute, as noted in the plaintiff's motion materials. After MGB rehired Orfanos in 2023, it granted her a religious exemption from its influenza-vaccination requirement. Its HR department told her she was "all set to go," and deployed her in the Brigham and Women's Hospital Emergency Department for months while she remained unvaccinated against COVID-19. MGB identified no outbreak, patient injury, or operational disruption attributable to her work.

Steverman was hired soon after her termination, not directly, but by an MGB affiliate, and then worked unvaccinated at several MGB facilities, providing direct, patient-facing education for approximately two years, all without any identified incident or cluster. ECF 452, Par. 79. The *Jangl* case involved no comparable evidence of the employer's subsequent experience accommodating the same employees in patient-facing settings.

Thus, despite *Jangl* distinguishing the facts in *Jeune*, the decisive issue remains the adequacy of the employer's proof. Unlike the unrebutted affidavits and deemed-admitted facts in *Jangl*, MGB's own testimony and conduct create a genuine dispute about whether simply accommodating these two nurses would have imposed a substantial practical burden. Thus, summary judgment is unwarranted.

## II. The *Groff* Case Governs Plaintiffs' Title VII Claims and Requires a Fact-Specific Showing of Substantial Burden

The *Jangl* opinion adjudicated a state religious employment discrimination claim under Mass. Gen. Laws ch. 151B. The claims of Orfanos and Steverman arise under Federal Title VII and are governed by the standard for reasonable accommodation set out in *Groff v. DeJoy*, 600 U.S. 447 (2023). Under *Groff*, an employer must prove that granting the particular

accommodation would result in substantial increased costs in relation to the overall conduct of its particular business.

Plaintiffs do not dispute that the state and federal standards align. The question is whether, under that standard, MGB's own evidence creates a genuine dispute of fact. The inquiry must account for all relevant circumstances, including the particular accommodation and its practical impact on the employer's operations. Generalized assertions do not substitute for identifying the accommodation's actual ramifications and available mitigating options to the employer's business. *Groff v. DeJoy*, 600 U.S. 447, 467 (2023).

The First Circuit applies that same fact-specific standard. See, *Melino v. Boston Medical Center*, 127 F.4th 391, 397 (1st Cir. 2025). In that opinion, the court recognized that undue hardship depends on analysis of all relevant factors, the accommodation that the employee actually requested, and its practical impact on the employer in light of the employer's operations. *Melino* at 397.

In *Melino*, however, the plaintiff employee sought to continue working unvaccinated in hospital critical-care and intensive-care units and did not dispute that the employer could establish undue hardship if vaccination reduced transmission. She instead argued that the employer had to independently prove that the vaccines worked. *Id.* In *Rodrique v. Hearst Communications*, 126 F.4th 85, 91 (1st Cir. 2025), cited in MGB's materials, the court likewise rejected an argument that the employer needed expert testimony independently proving vaccine efficacy where the employer had relied on objective scientific information and public-health guidance. *Rodrique* at 91.

In light of these First Circuit holdings, the plaintiffs do not ask this Court to revisit those outcomes or decide that COVID-19 vaccines were ineffective. Their argument concerns evidence

absent from the *Melino* and *Rodrique* opinions, namely MGB's own description of the incremental risk as "marginal," its Infection Control conclusion supporting masked work, its approval of numerous patient-facing exemptions, and its subsequent experience permitting these two nurses to perform unvaccinated patient-facing work without an identified incident.

Those facts bear directly on the employer's *Groff*-required inquiry into the practical impact of these particular accommodations. Neither *Jangl*, *Melino*, nor *Rodrique* converts patient contact into categorical undue hardship or permits the Court to disregard employer-specific evidence concerning the actual magnitude of the asserted burden.

## III. *Jangl* Does Not Apply When MGB Used A Religious Checklist To Determine Who Would Be Fired

*Jangl* also does not apply where a failure to provide a reasonable accommodation to an employee flows from a religious checklist, as it did with MGB's firing of these plaintiffs. MGB's exemption process used categorical, denomination-based sorting—not an individualized hardship assessment, as required by Title VII and *Groff.* Therefore, *Jangl* does not control this record.

In *Jangl*, the employer was denied a religious exemption, and the Massachusetts Appeals Court affirmed summary judgment on an undue-hardship theory tied to the plaintiff's particular job duties and the risks the court found supported on that record. Whatever the strength of that analysis on its own facts, it does not describe what MGB did here.

The evidence in this case shows that MGB's Religious Exemption Review Committee did not evaluate requests through a neutral, applicant-specific inquiry into sincerity and the practical impact of accommodation on its business. Instead, MGB applied a pre-set categorical framework—functioning in substance like a check-the-box sorting system—under which certain

religions and belief types were channeled toward approval and others toward denial, before any meaningful, individualized assessment of the particular employee's role, workplace risk, or the cost of accommodation.

MGB's internal religious-exemption criteria identified favored categories— including specified denominations that could be approved on a "basic explanation"—while treating other faith traditions and belief contents, including Catholic and conscience-based objections of the kind Plaintiffs asserted, with heightened suspicion or categorical denial.

This was done entirely in secret without informing the employees that their requests would be sorted by denominational and doctrinal check-boxes. They submitted personal statements of belief into an opaque process and received template denials, not a documented analysis of why accommodating this nurse in this assignment would impose substantial increased costs under *Groff*.

That structure matters for two independent reasons. First, it undermines MGB's attempt to treat *Jangl* as a template for judgment as a matter of law. *Jangl* does not hold that an employer may prevail on summary judgment where the record supports an inference that denials were driven by religious classification rather than a fact-specific hardship determination. Title VII protects sincere religious exercise without requiring conformity to MGB's preferred list of "approved" faiths or belief formulations. A process that sorts applicants by religion and belief content is the opposite of the individualized inquiry *Groff* and this Court's Phase I order require.

Second, the categorical system used by MGB creates genuine disputes on disparate treatment and pretext that *Jangl* does not resolve. On the same day Plaintiff Orfanos received a template denial of her religious exemption, the record reflects that upper management intervened in the process of another employee's religious exemption request that had been denied, followed

by a rapid reversal of that employee's denial—while Orfanos received no comparable engagement, explanation, or opportunity to appeal to anyone.

For another example, at the same time that Orfanos was denied an exemption based on her application under the Catholic faith, another nurse in Orfanos's own department was given a religious exemption, and was approved to work unvaccinated in a patient-facing position. ECF 474, Par. 42.

Combined with MGB's undisclosed denominational grid, that evidence permits a jury to find that outcomes turned on which religious box was checked—not on a uniform assessment of patient risk or operational cost. It is enough to deny summary judgment that the governing criteria and the treatment of these Plaintiffs support an inference of categorical religious sorting. That inference is absent from *Jangl* and precludes importing *Jangl*'s result onto this record.

## IV. ***Jangl* Does Not Make MGB's "Differential Threat" Theory Undisputed**

As shown in Section I above, the MGB motion treats *Jangl* as a mathematical construct with a pre-determined outcome: Patient-facing work plus a vaccine mandate = undue hardship as a matter of law. That is not the law, and it is not in accord with this case's "undisputed" record.

MGB's legal theory is not a modest claim that vaccination can reduce disease severity. MGB's papers insist that unvaccinated employees posed a distinct, unacceptable danger to patients, staff, and operations—in superlative and categorical terms such as "grave and deadly risk"—and that accommodating unvaccinated patient-facing workers was untenable as a matter of law. (Supp. Memo, Page 3).

That proposition stands or falls on a comparative claim: that an unvaccinated worker presents a materially greater transmission or safety risk than a vaccinated worker doing

comparable work. *Jangl* does not establish that differential for MGB. It does not erase *Groff*'s demand for a fact-specific showing of substantial increased costs tied to the particular accommodation. *Groff v. DeJoy*, 600 U.S. 447, 470–71 (2023). And it does not displace this Court's Phase I holding that hardship must be assessed on individualized, plaintiff-specific records—not system-wide slogans. (ECF No. 173.)

MGB has chosen in its papers to rest on the premise that unvaccinated workers posed a "unique threat" and it must live with the consequences of that claim by complying with the requirements of *Groff*. It cannot invoke *Jangl* to make that asserted threat "undisputed", while resisting scrutiny of the very premise its hardship theory requires.

In short: Plaintiffs dispute MGB's threat differential theory, not the existence of vaccination as a medical intervention. Without transforming this case into a general vaccine trial, the 2021 record (as set out in detail in Section I above) includes evidence that infected vaccinated persons could carry viral loads comparable to infected unvaccinated persons and could transmit SARS-CoV-2, including during the Delta period — precisely when MGB implemented its new vaccination policy.

## V. <u>ECF No. 173 Remains the Law of This Case</u>

This Court's Phase I order supplies the governing framework for evaluating MGB's evidence in this litigation. The Court held that the dispute was not an all-or-nothing proposition; MGB made separate exemption decisions for many employees, including patient-facing nurses. Rather, the claims required plaintiff-specific factual records; and MGB's accommodation of approximately 234 employees demonstrated that it had treated some level of risk as tolerable. ECF No. 173 at 2–3. The Court therefore framed the relevant question as whether the

incremental difference between 234 and 235 unvaccinated employees would materially increase the risk sufficiently to warrant summary judgment. Id. at 15.

This Court further observed that MGB did not set a maximum number of permissible accommodations for employees and elected to pick and choose among its employees rather than confining exemptions to remote or non-patient-facing positions. ECF No. 173 at 13–14. The approved group included nurses, physicians, technicians, patient-care associates, and other employees providing hands-on clinical care. That framework does not compel approval of every request, but it forecloses a categorical presumption that one additional patient-facing employee necessarily imposed an undue hardship.

The *Jangl* opinion did not consider the situation where an employer that had already approved approximately 234 unvaccinated employees, including approximately 49 nurses, in patient-facing clinical positions, continued to work, as here. Nor did it address the incremental-risk question identified in ECF No. 173 or an evidentiary record in which the employer's own epidemiologist characterized that incremental risk as "marginal." Nothing in *Jangl* displaces this Court's plaintiff-specific framework or resolves whether accommodating Orfanos or Steverman would have materially increased MGB's costs or operational burdens in any way.

**<u>Conclusion</u>**

The opinion in the recent *Jangl* case affirmed summary judgment for a state agency on an uncontroverted record in a Massachusetts state case under Chapter 151B, supported by employee-specific medical and operational evidence. It did not abrogate the holding in *Jeune*, issued after the governing Title VII standard was changed under *Groff*, nor did it displace this

Court's determination that MGB's hardship defense must be evaluated under the "234 to 235" incremental-risk framework.

Categorical religious sorting and a disputed "unique threat from the unvaccinated" theory are independent defects in MGB's summary-judgment showing. Either is sufficient to require denial of judgment as a matter of law on this record.

Because MGB's own evidence and conduct create genuine disputes concerning the practical and incremental burden of accommodating Orfanos and Steverman, ECF No. 492 does not establish undue hardship as a matter of law and MGB's motions for summary judgment should be denied.

Respectfully submitted,
The Plaintiffs Orfanos and Steverman,
By counsel,

Dated: October 22, 2026

/s/ Gregory Hession
Gregory A. Hession, J.D.
93 Summer Street
P.O.. Box 543
Thorndike, MA 01079
(413) 746-3333
B.B.O. No. 564457
hession@crocker.com

**Certificate of Service**

I, Gregory A. Hession, counsel for plaintiffs, hereby certify that I have served the foregoing paper to counsel for defendant, Kristin G. McGurn, Dawn R. Solowey, and Michael E. Steinberg, at SEYFARTH SHAW LLP, Seaport East, Two Seaport Lane, Suite 1200, Boston, MA 02210-2028, via ECF filing on October 23, 2026.

/s/ Gregory Hession
Gregory A. Hession, J.D.